[No. B068526. Second Dist., Div. Six. Mar. 9, 1994.]

AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS, Plaintiff and Appellant, v. UNEMPLOYMENT INSURANCE APPEALS BOARD, Defendant and Respondent.

## COUNSEL

Laurence Gold, Altshuler, Berzon, Nussbaum, Berzon & Rubin, Stephen P. Berzon and Michael Rubin for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Charlton G. Holland III, Assistant Attorney General, John H. Sanders and Laurie R. Pearlman, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

STONE (S. J.), P. J.— Was a worker on an offshore oil drilling platform who was discharged for refusing to submit to a urinalysis drug test discharged for "misconduct connected with his or her most recent work" and thus ineligible for unemployment compensation benefits? (Unemp. Ins. Code, § 1256.)[1] We hold that he was. We affirm the trial court's judgment denying declaratory relief to the American Federation of Labor and Congress of Industrial Organizations (AFL-CIO) which brought an action pursuant to section 409.2 to obtain a judicial declaration of the validity of the 1990 California Unemployment Insurance Appeals Board (CUIAB) precedent benefit decision, *In the Matter of David Hayes* (1990) Cal. Unemp. Ins. App. Bd. Precedent Benefit Dec. No. P-B-470.

### FACTS

The facts set forth in the precedent benefit decision are as follows: David Hayes was employed as a housekeeper for SHRM Catering Services, Inc. (SHRM) which maintained living quarters for oil drill workers on offshore

---

[1] All statutory references are to the Unemployment Insurance Code unless otherwise indicated.

drilling platforms. His work hours were generally 7 a.m. to 7 p.m., for 14 days straight with 7 days' shore leave before returning for another 14-day shift. Hayes lived on the oil platform while working.

SHRM was under contract with its client, Chevron Corporation (Chevron), to maintain a drug-free work force. SHRM's drug-free policy was set forth in its handbook distributed to all employees and was posted on the platforms. Employees were required to take an annual physical which included a drug test and were subject to discharge for refusal to take a drug test. Employees were also subject to random drug testing conducted by SHRM, by Chevron, and by the United States Coast Guard.

According to Hayes, he tested positive for marijuana in a drug screen as part of a preemployment physical in 1987 but was eventually hired. When required to take a drug screen as part of his annual physical, he told his then supervisor that he would test positive at that time, and was not required to take the screen. In May 1988, Hayes was given a random drug screen and tested positive for cocaine and marijuana use. He was suspended for approximately three weeks before he was returned to work.

In May 1989, a new supervisor began to enforce strictly the employer's drug-free policy. The supervisor advised Hayes that he would soon be asked to take his annual physical, including a drug screen. While Hayes was on his next shore leave, the supervisor scheduled Hayes's physical which was to be completed before Hayes returned to the platform. Hayes was not expecting the physical until the following shore leave. He told the supervisor that he would not take the drug test at this time because he knew he would test positive. When he refused to take the drug test, the employer discharged him.

Hayes acknowledged smoking marijuana while on shore but stated that even if he ingested the drug on the night before reporting back to work, its effects would have worn off completely by the time he reached the platform after a two-hour drive from his home to the helipad and an hour wait for the helicopter to carry him to the platform. He acknowledged that the platform was a dangerous place to work and he had witnessed several accidents. He knew that it would pose a danger to himself if he were impaired while working on the platform because it would be easy to slip on one of the many steps or to spill kitchen grease on himself.

Hayes claimed at the hearing before the CUIAB that it was unfair for SHRM to demand a drug screen with the annual physical when it had waived that requirement for the two preceding years, and that if he had been given

more advance notice, he would have been able to test "clean." He denied any drug usage while on the offshore rig. SHRM contended that the purpose of the drug policy was to enhance safety in the workplace. The tests were not scheduled to provide the employees with an opportunity to "get clean" for the test while engaging in drug usage during the rest of the year.

The majority of the CUIAB found the issue to be "whether the claimant can be discharged for refusal to take a regularly scheduled annual physical which includes drug screening." The CUIAB found that Hayes was not being required to submit to a random, unscheduled, first-time drug test, but a regularly scheduled test which had been given in the past with only the date of the present test unknown. Moreover, Hayes had tested positive in the past and had consequently been suspended from his work. Thus he had a lesser expectation of privacy.

The CUIAB, in balancing the employer's interest in ensuring a drug-free workplace with Hayes's expectation of privacy, found that Hayes did not have an expectation of privacy sufficient to offset the employer's interest in ensuring a drug-free workplace. "He knew that his working environment was dangerous. He was aware that his employment was subject to random testing and to an annual physical which included drug screening. He knew from May of 1989 that the new supervisor was enforcing the testing policy. He knew specifically that his physical exam would be scheduled in October. The employer happened to schedule the testing for the claimant's first shore leave in October. We do not believe that the claimant had a reasonable expectation that the testing would occur during a later leave, affording him the opportunity to test 'clean'. . . . [¶] The employer hired the claimant to work in a dangerous environment on an offshore oil drilling platform. For safety reasons, the employer has an obvious interest in having its work force drug free. The employer was contractually obligated to its client to maintain a drug-free work force. In addition, the claimant had tested positive in the past."

The CUIAB found that, on balance, the employer's interest in having its employees submit to annual drug testing was substantial while Hayes's expectation of privacy was minimal. Thus, Hayes's right of privacy under article I, section 1 of the California Constitution was not violated and by refusing to submit to the drug screen, "a reasonable requirement of the employer directly related to its business," Hayes was insubordinate and his resulting discharge was for misconduct. The CUIAB reversed the decision of the administrative law judge who had reached the opposite conclusion and ordered Hayes discharged for misconduct.

The AFL-CIO filed an action for declaratory relief under section 409.2 to declare invalid the precedent benefit decision, *In the Matter of David Hayes, supra,* Cal. Unemp. Ins. App. Bd. Precedent Benefit Dec. No. P-B-470, contending that it was at odds with earlier decisions.[2] It cited the dissent of two members of the CUIAB which found that Hayes's job was not an inherently dangerous or sensitive employment and that the employer had no reasonable suspicion that Hayes was under the influence of drugs while on the job, a standard the dissent stated the CUIAB had adopted in its earlier decision, *In the Matter of Vernon Ables* (1987) Cal. Unemp. Ins. App. Bd. Precedent Benefit Dec. No.P-B-454. The AFL-CIO stated that the only issue was whether, under section 1256, a worker is statutorily ineligible for unemployment compensation benefits if he or she is discharged for refusing to take a random drug test, when that worker performed a nonsafety-sensitive job and there was no evidence of on-the-job drug use or impairment.[3]

The trial court found that even though there was not reasonable cause to believe Hayes was then using or under the influence of illegal drugs on the job, he was employed in a hazardous work environment "which was obviously safety sensitive by nature of the environment, though not as a result of the specific job the worker performed." The court refused to declare invalid Precedent Benefit Decision No. P-B-470, *supra,* and denied the motion for declaratory relief. This appeal followed.

DISCUSSION

1. *Standard of Review*

■ The California Supreme Court has set forth the proper standard of review for appellate courts assessing the validity of precedent benefit decisions under section 409.2. Precedent decisions are akin to agency rulemaking and, therefore, judicial recourse is available under section 409.2 to persons affected by the precedent similar to recourse generally available against regulations. (*Pacific Legal Foundation* v. *Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101, 109 [172 Cal.Rptr. 194, 624 P.2d 244].) Since the

---

[2]Section 409.2 allows any interested person or organization to "bring an action for declaratory relief in the superior court in accordance with the provisions of the Code of Civil Procedure to obtain a judicial declaration as to the validity of any precedent decision of the appeals board issued under Section 409 or 409.1."

[3]Section 1256 states, in pertinent part, that "[a]n individual is disqualified for unemployment compensation benefits if the director finds that he or she left his or her most recent work voluntarily without good cause or that he or she has been discharged for misconduct connected with his or her most recent work."

board's precedent decisions simply interpret controlling statutes and regulations, their correctness as precedent relates to law and policy rather than to factual resolutions. *(Ibid.)*

Because a judicial declaration of invalidity obtained by a third person does not alter the operative impact between claimants and employers, "in a third-party declaratory action under section 409.2 the courts may only determine whether the board decision accords with the law that would govern were the rule announced articulated as a regulation. There should be no review of the underlying record or new evidence to discover whether the board correctly resolved disputes on adjudicative facts. The board's version of those facts may not be disturbed unless it lacks substantial support on the face of the decision." *(Pacific Legal Foundation* v. *Unemployment Ins. Appeals Bd., supra,* 29 Cal.3d at p. 111.) However, even though a court will give great weight to the agency's view of a statute or regulation, the reviewing court construes the statutes as a matter of law and will reject administrative interpretations where they are contrary to statutory intent. *(Ibid.; Robinson* v. *Fair Employment & Housing Com.* (1992) 2 Cal.4th 226, 235, fn. 6 [5 Cal.Rptr.2d 782, 825 P.2d 767]; *Carmona* v. *Division of Industrial Safety* (1975) 13 Cal.3d 303, 310 [118 Cal.Rptr. 473, 530 P.2d 161].)

2. *Refusal to Submit to a Drug Screen Is Misconduct for an Employee Who Works in a Safety-sensitive Environment*

Appellant asserts that the CUIAB's holding is extremely broad in that it denies unemployment compensation benefits to all workers discharged for refusing a suspicionless drug test without regard to the nature of their employment and is not limited to workers performing ultrahazardous or safety-sensitive jobs. They assert that the only "dangers" identified by the CUIAB in his job, i.e., slipping on steps and spilling kitchen grease, are the routine dangers present in any workplace. According to appellant, the CUIAB's decision differs markedly from other drug testing cases in which the workers' specific jobs were safety sensitive, such as nuclear power plant operators, police officers, or airline pilots. Appellant contends that the only issue presented is whether, under section 1256, a worker is ineligible for unemployment compensation benefits if he or she is discharged for refusing to take a random drug test, when that worker performed a non-safety-sensitive job and there is no evidence of on-the-job drug use or impairment.

Appellant would have us disregard the standard of review and draw factual inferences other than those of the CUIAB and found supported by the

trial court. The test was to be part of Hayes's annual physical exam with only the exact date in October unknown by Hayes. However, whether the test was annual or random is not determinative here. The determinative issue is whether the alleged misconduct is job related and harmful of the employer's interests. Simply because an employer has and exercises a right to discharge an employee, does not establish misconduct necessary to deny unemployment benefits. (Cal. Code Regs., tit. 22, § 1256-30, subd. (e); see also *Grace Drilling Co.* v. *Novotny* (Okla.App. 1991) 811 P.2d 907, 909.) Mere inefficiency, unsatisfactory conduct, inadvertencies or ordinary negligence or good faith errors in judgment or discretion do not constitute "misconduct" within the meaning of the statute. (*Amador* v. *Unemployment Ins. Appeals Bd.* (1984) 35 Cal.3d 671, 678 [200 Cal.Rptr. 298, 677 P.2d 224]; see also *Maywood Glass Co.* v. *Stewart* (1959) 170 Cal.App.2d 719 [339 P.2d 947].)

■ The elements of work-connected misconduct are set forth in title 22, California Code of Regulations, section 1256-30, subdivision (b): "(1) The claimant owes a material duty to the employer under the contract of employment. [¶] (2) There is a substantial breach of that duty. [¶] (3) The breach is a willful or wanton disregard of that duty. [¶] (4) The breach disregards the employer's interests and injures or tends to injure the employer's interests." Courts have limited "misconduct," as used in the code, to " ' "conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. . . ." ' " (*Amador* v. *Unemployment Ins. Appeals Bd.*, *supra*, 35 Cal.3d at p. 678.) This restricted interpretation is because the policy of the code is to provide benefits to "persons unemployed through no fault of their own." (§ 100.)

As appellant indicates, an employee's participation in illegal or criminal actions while away from the place of employment usually is not connected with the work and is not misconduct. (Cal. Code Regs., tit. 22, § 1256-33, subd. (b).) For example, a janitor who is arrested and convicted of drunk driving while off duty and thereafter discharged is not discharged for misconduct because his off-duty acts did not tend to substantially injure the employer's interests. (Cal. Code Regs., tit. 22, § 1256-33, example 3.) When the off-the-job activity of an employee does not injure or tend to injure the employer's interest, the employer cannot reasonably impose its standards of

behavior on an employee during off-duty time. (Cal. Code Regs., tit. 22, § 1256-33, subd. (b).) However, there are situations in which the employer is injured or tends to be injured by an employee's off-duty conduct which usually involves illegal or criminal activity. (*Ibid.*)

If the off-duty criminal activity undermines the employer's reputation and the public's trust and confidence in the employer, the conduct is work connected. Although there is a dearth of California published cases discussing when illegal off-the-job conduct becomes work connected, there are decisions from other jurisdictions on this topic. These cases are of questionable aid here since many of them rely on their own statutes or are fact specific. Nonetheless, they suggest that off-duty drug or alcohol use with no on-the-job impairment is not work connected unless the employee works in a safety-sensitive position or the employee's position is such that his conduct will undermine public trust and damage the employer's reputation or the drug test is part of a federally imposed safety program. (See, e.g., *Clevenger* v. *Nevada Employment Sec. Dept.* (1989) 105 Nev. 145 [770 P.2d 866]; *Glide Lumber Products Co.* v. *Emp. Div.* (1987) 86 Ore.App. 669 [741 P.2d 907]; *Grace Drilling Co.* v. *Novotny, supra,* 811 P.2d 907; *National Gypsum* v. *State Employment Sec.* (1989) 244 Kan. 678 [772 P.2d 786]; *Olson* v. *Job Service North Dakota* (N.D. 1985) 379 N.W.2d 285; *Singleton* v. *Unemp. Comp. Bd. of Rev.* (1989) 125 Pa.Commw. 397 [558 A.2d 574]; *Veneer* v. *Employment Div.* (1991) 105 Ore.App. 198 [804 P.2d 1174]; *Farm Fresh Dairy, Inc.* v. *Blackburn* (Okla. 1992) 841 P.2d 1150.)

Appellant asserts that the job-relatedness criteria are fully supported by the CUIAB's previous precedent benefit decisions which drew a careful distinction between on-duty misconduct which is disqualifying and off-duty misconduct, even of an identical nature, which is not disqualifying. In *In the Matter of William Shaffer* (1948) Cal. Unemp. Ins. App. Bd. Precedent Benefit Dec. No. P-B-189, the employee was discharged after gambling while on a week's leave of absence after having been warned that if he continued to gamble while on duty he would be fired. The CUIAB found that Shaffer's discharge was not for misconduct connected with his most recent work since the gambling that triggered the discharge did not take place while he was on duty.

The precedent benefit decision which appellant cites as most directly in point, and from which it contends the CUIAB has now departed, is the one mentioned in the *Hayes* dissent, *In the Matter of Vernon Ables, supra,* Cal. Unemp. Ins. App. Bd. Precedent Benefit Dec. No. P-B-454. In *Ables,* the claimant, a drop hammer operator, was discharged for refusing to submit to

a urinalysis which the employer was requiring to discover whether or not the claimant's ability to operate dangerous equipment was impaired by alcohol or drugs. The employer had a formal written policy setting forth the circumstances under which an employee was required to submit to a chemical test, i.e., if a manager or supervisor has a reason to suspect an employee of being under the influence of alcohol or drugs. The security manager had observed behavior by Ables that led him to conclude that Ables might be under the influence of an intoxicant. Ables refused to take a test, although he had on previous occasion tested negative, and was discharged from his employment.

The CUIAB found Ables' refusal unreasonable and insubordinate and that his resulting discharge was for misconduct. "While each individual possesses a right to personal privacy, when an employee is employed in an inherently dangerous occupation where there exists a substantial risk of harm to himself or others, as was the case with the claimant here, such right must yield to the employer's overriding concern for the safety of all employees when there is a reasonable suspicion on the employer's part that an employee may be under the influence of some intoxicant." (*In re Ables, supra,* Cal.Unemp.Ins.App.Bd. Precedent Benefit Dec. No. P-B-454, p. 7.)

Appellant contends that the CUIAB suddenly abandoned years of settled law by discarding the crucial statutory distinction between on-the-job and off-the-job conduct. Appellant does not dispute that Hayes was well aware of SHRM's stated policy and knew that he would be subject to drug tests when he was hired. Its argument is that Hayes's off-duty conduct was irrelevant when his job was not safety sensitive. As the trial court acknowledged, the departure in this case from earlier precedent was whether the CUIAB's decision was invalidated because Hayes was employed "in a hazardous work environment which was obviously safety sensitive by nature of the environment" although Hayes was not employed in a specific job that was safety sensitive. The trial court concluded it was not and so do we.

SHRM's adoption of a drug-free workplace policy cannot, in and of itself, turn an employee's refusal to take a drug test into misconduct. Failure to abide by a rule does not automatically establish a nexus for the misconduct required to deny unemployment benefits (*Grace Drilling Co.* v. *Novotny, supra,* 811 P.2d at p. 909.) However, since fault is the basic element to be considered in interpreting and applying the statutes in question, if the employer's policy and regulation is reasonable and job related, violation of the policy or regulation will amount to misconduct. (See, e.g., *Szostek* v. *Unemp. Comp. Bd. of Review* (1988) 116 Pa.Commw. 7 [541 A.2d 48, 50], in which the reviewing court held that the employee's conduct of admitting

marijuana use after being in an employer-sponsored drug rehabilitation program and being allowed to return to work fell within the definition of willful misconduct; it represented a deliberate violation of an employer rule as well as a disregard of standards of behavior which the employer had a right to expect.) Cases from other jurisdictions have also held that an employee's discharge is for misconduct where the employee agreed as a term of his employment contract to be drug free. (See *Farm Fresh Dairy, Inc.* v. *Blackburn, supra,* 841 P.2d at p. 1153; *Grace Drilling Co.* v. *Director of Labor* (1990) 31 Ark.App. 81 [790 S.W.2d 907].)

Here SHRM had a reasonable interest in having its employees submit to annual and periodic drug screens. Hayes was hired to work on an offshore oil drilling platform, environment which Hayes himself testified was hazardous. Thus the employer had a strong safety interest in having a drug-free work force. Furthermore, SHRM was contractually obligated to Chevron and other oil-drilling platform clients to maintain a drug-free work force and was also required to do so by the Coast Guard. Given the hazards to all employees working on the oil-drilling platform who could injure themselves, if impaired, and jeopardize the safety of others who might have to come to their rescue, this requirement was reasonable.

SHRM had already been forced to remove Hayes from another offshore platform because of a positive drug screen in 1988, and Hayes admitted he would have tested positive on other occasions as well. Thus, we hold that even though Hayes's job might not be considered "safety sensitive" in another location, the hazardous environment in which he worked, by his own admission, made it so in this case. Substantial evidence supports the CUIAB's finding that Hayes demonstrated a wanton disregard for his employer's business interests and that his refusal to submit to the drug screen was misconduct under section 1256.

3. *No Unconstitutional Infringement on Right to Privacy*

■ Appellant, citing the *Hayes* dissent, argues that an employer's rule requiring the termination of non-safety-sensitive workers who refuse to submit to a random drug test violates those workers' right of privacy under article I, section 1 of the California Constitution. They assert that because

SHRM's underlying workplace rule was unreasonable, Hayes's discharge cannot lawfully form the predicate for the denial of unemployment benefits. According to appellant, the CUIAB majority refused to analyze this case under the correct "compelling interest" test, and instead adopted the more deferential "reasonableness" test articulated in *Wilkinson* v. *Times Mirror Corp.* (1989) 215 Cal.App.3d 1034 [264 Cal.Rptr. 194], which involved drug testing of *applicants* as part of a preemployment physical examination.

Appellant asserts that had SHRM's drug testing policy been limited to workers in safety-sensitive jobs or workers who were reasonably suspected of using drugs on the job or being impaired in their workplace performance as a result of off-duty drug use, that policy might survive constitutional challenge under a compelling interest test. However, even if SHRM's drug-free workplace rule were sufficiently job related, the resulting invasion of privacy would still be unconstitutional unless there were no " 'less offensive alternatives' " to drug testing available. Several California appellate cases are instructive.

*Wilkinson* v. *Times Mirror Corp.*, *supra*, 215 Cal.App.3d 1034, 1041, held that although the California Supreme Court has not yet decided whether purely private action may constitute a violation of article I, section 1 of the California Constitution (see *Schmidt* v. *Superior Court* (1989) 48 Cal.3d 370, 389, and fn. 13 [256 Cal.Rptr. 750, 769 P.2d 932]), California appellate courts have consistently held that article I, section 1, protects against private conduct. (*Wilkinson*, *supra*, at p. 1042.) In analyzing whether pre-employment urinalysis test violated California's constitutional right to privacy, *Wilkinson* looked to recent United States Supreme Court cases concerning the Fourth Amendment and mandatory drug testing of railroad and Customs Service employees. In *Skinner* v. *Railway Labor Exec. Assn.* (1989) 489 U.S. 602 [103 L.Ed.2d 639, 109 S.Ct. 1402], the Supreme Court, after concluding that collection and testing of urine intrudes upon expectations of privacy and must be deemed a search under the Fourth Amendment, balanced the intrusiveness of the testing against the government's interest served by testing. The high court held that, even without individualized suspicion, the testing was constitutionally permissible.

This conclusion was based upon the railroad employees' already diminished expectation of privacy due to the pervasive regulation of the railroad industry to ensure safety and that the employees subject to testing perform duties "fraught with such risks of injury to others that even a momentary lapse of attention can have disastrous consequences." (*Skinner* v. *Railway Labor Exec. Assn.*, *supra*, 489 U.S. at p. 628 [103 L.Ed.2d at p. 667]; *Wilkinson* v. *Times Mirror Corp.*, *supra*, 215 Cal.App.3d at pp. 1044-1045.)

In *Treasury Employees* v. *Von Raab* (1989) 489 U.S. 656 [103 L.Ed.2d 685, 109 S.Ct. 1384], the Supreme Court reviewed the United States Customs Service program requiring a drug screening test from employees seeking transfer to drug interdiction positions, or who either carried firearms or handled certain "classified" materials. The court found reasonable the policy of deterring drug users from seeking such promotions "[i]n light of the extraordinary safety and national security hazards that would attend the promotion of drug users to positions that require the carrying of firearms or the interdiction of controlled substances . . . ." (At p. 674 [103 L.Ed.2d at p. 707].) Concerning employees with possible access to classified material, the court acknowledged the government's compelling interest in protecting "truly sensitive information," but remanded for additional proceedings because the category of employees subject to testing was too broadly defined. (*Id.*, at pp. 677-678 [103 L.Ed.2d at pp. 709-710]; *Wilkinson* v. *Times Mirror Corp.*, *supra*, 215 Cal.App.3d at p. 1045.)

The reviewing court in *Wilkinson* v. *Times Mirror Corp.*, *supra*, concluded that a compelling interest is not required as long as the right to privacy is not substantially burdened or affected and, instead, the question is whether the challenged conduct is reasonable. (215 Cal.App.3d at p. 1047.) The court found as the most important factor in its analysis that the plaintiffs were applicants for employment rather than employees. As applicants for employment in private business, they necessarily had to anticipate being asked to take a preemployment physical examination and had a lesser expectation of privacy. (*Id.*, at p. 1048.)

The court in *Wilkinson* stated that employers have a legitimate interest in excluding from employment those individuals whose drug and alcohol use may affect their job performance or threaten harm to themselves and that the employer did not violate article I, section 1 of the California Constitution by demanding of job applicants to consent to a urinalysis which tests for alcohol and other drugs as a condition of a job offer. (*Wilkinson* v. *Times Mirror Corp.*, *supra*, 215 Cal.App.3d at p. 1051.) The court specifically did not consider the constitutionality of a private employer's drug testing of its employees, or the effect of a private employee's consent to drug testing under the threat of loss of employment. (*Id.*, at p. 1050, fn. 9.)

In *Luck* v. *Southern Pacific Transportation Co.* (1990) 218 Cal.App.3d 1 [267 Cal.Rptr. 618], plaintiff Luck, who was discharged for refusing to take a random drug test which was part of a new policy instituted by her employer, sued for wrongful termination and obtained a jury verdict in her favor. The reviewing court found both the collection and testing of urine to

be privacy interests protected by article I, section 1 of the California Constitution and that a private employer is bound by its terms. (*Id.*, at pp. 17, 19.) The reviewing court applied the compelling state interest test to analyze whether the employer's random testing policy was justified and noted that this test places a heavier burden on the employer "than would a Fourth Amendment privacy analysis, [which balances the] intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." (*Id.*, at p. 20.)

The reviewing court in *Luck* stated that since Luck had nothing to do with actual operation of trains or railroad equipment, she had no public safety duties which would justify the testing policy. (*Luck v. Southern Pacific Transportation Co.*, *supra*, 218 Cal.App.3d at p. 21.) The court also stated that although no court has determined whether the question of whether an employee is a safety employee presents an issue of law or fact, where there is no factual dispute about the nature of the employee's work, the issue of whether it was safety related should be one of law for the court. (*Ibid.*) The court then looked to federal authority for aid in answering the question. "The safety rationale adopted by the Supreme Court in *Skinner* and *Von Raab* focused on the immediacy of the threat. The point was that 'a single slip-up by a gun-carrying agent or a train engineer may have irremediable consequences; the employee . . . will have no chance to recognize and rectify [a] mistake, nor will other . . . personnel have an opportunity to intervene before the harm occurs.' [Citation.] *Skinner* and *Von Raab* provide no basis for finding that an office employee constitutes a safety risk when the chain of causation between misconduct and injury is greatly attenuated." (*Id.*, at p. 23.)

According to *Luck*, federal decisions applying *Skinner* and *Von Raab*, require a clear, direct nexus between the employee's duties and the nature of the feared harm in order to uphold drug testing. (*Luck v. Southern Pacific Transportation Co.*, *supra*, 218 Cal.App.3d at p. 23.) The reviewing court in *Luck* affirmed the trial court's ruling that other nonsafety interests, i.e., deterrence, efficiency, competence, creating a drug-free environment, enforcing rules against drug use, and ensuring public confidence in the integrity of the railroad industry, were not compelling to justify an intrusion on Luck's privacy rights. (*Id.*, at p. 24.)

The CUIAB here employed the "reasonableness" test of *Wilkinson* rather than the "compelling interest" test used in *Luck* because it found that the critical factor is the individual's expectation of privacy, rather than the individual's employment status. Aside from *Wilkinson*, California cases have

employed the compelling interest test where fundamental rights of an employee such as the right of privacy are concerned. (See, e.g., *Long Beach City Employees Assn.* v. *City of Long Beach* (1986) 41 Cal.3d 937, 948, fn. 12 [227 Cal.Rptr. 90, 719 P.2d 660]; *Semore* v. *Pool* (1990) 217 Cal.App.3d 1087, 1097-1098, fn. 5 [266 Cal.Rptr. 280]; *Thornton* v. *Department of Human Resources Dev.* (1973) 32 Cal.App.3d 180, 184 [107 Cal.Rptr. 892].) Nonetheless, the CUIAB in *In the Matter of David Hayes, supra,* Cal. Unemp. Ins. App. Bd. Precedent Benefit Dec. No. P-B-470, did not hold that SHRM's testing requirement could not satisfy the more rigorous standard of the compelling interest test. It simply declined to apply that standard.

A generalized interest in the integrity of the work force has not been found sufficient to overcome privacy interests in drug testing cases. (*IBEW, Local 1245* v. *U.S. NRC* (9th Cir. 1992) 966 F.2d 521, 525, fn. 9; *Taylor* v. *O'Grady* (7th Cir. 1989) 888 F.2d 1189, 1196.) Even an interest in safety in the setting of a nuclear power plant has not been found sufficient to justify drug testing of employees not in safety-sensitive positions. (*IBEW, Local 1245* v. *U.S. NRC, supra,* at p. 526.) Similarly, an employer cannot use a contractual agreement to circumvent the public policy favoring privacy, nor enforce such an agreement if it intrudes on an employee's right to privacy. (See *Semore* v. *Pool, supra,* 217 Cal.App.3d at p. 1097; *Gerdom* v. *Continental Airlines, Inc.* (9th Cir. 1982) 692 F.2d 602, 609; *Diaz* v. *Pan Am. World Airways, Inc.* (5th Cir. 1971) 442 F.2d 385, 389, re hiring discrimination.) "If the intrusion violates the right to privacy, it is illegal whether or not it is pursuant to an agreement. If pursuant to such an agreement, the agreement would be unenforceable because it would be against public policy." (*Semore, supra,* at p. 1097.)

We hold that even if the CUIAB should have employed the compelling interest test, that test is met here. Unlike an airport, transit authority, or even a nuclear power plant where some jobs might clearly be classified as non-safety-sensitive due to lack of access to equipment, places, or information disseminating areas where employee impairment could constitute a direct threat, the oil drilling platform was categorized by employer *and* employee as a hazardous work environment. Although a slip and fall in the kitchen of a restaurant or in a hotel room might not endanger anyone other than the person who fell, on an oil platform a slip and fall could be on outside stairways or areas where the impaired employee might not only injure himself, but cause others to leave their posts to rescue him. Similarly, spilling grease which could cause a fire might not be so much of a concern where all other employees can leave the threatened area. In a self-contained area out in the ocean on an oil derrick, the threat of fire becomes much more significant.

Lest appellant raise the argument that these scenarios are too speculative, these potential threats to safety are more persuasive in the setting of an offshore drilling platform where all employees might be threatened by the acts of a drug-impaired employee than in a setting where the acts of a drug-impaired employee could not possibly pose a direct threat to the safety of the other employees or the employer's business. (Compare *IBEW, Local 1245* v. *U.S. NRC, supra,* 966 F.2d 521.)

Hayes's privacy expectations were minimal since when he took the job, he knew that both the Coast Guard and oil companies with whom his employer contracted could order him to be tested at any time. His refusal to submit to his annual drug screen harmed his employer's business and safety interests. Consequently, the CUIAB's decision finding that Hayes was discharged for misconduct, rendering him ineligible to receive unemployment benefits was not arbitrary and capricious. The requirement of a drug screen as part of an annual physical examination, under the circumstances, was a minimal intrusion on his already diminished expectation of privacy. Consequently, we need not consider whether there were less intrusive alternatives.

The judgment of the superior court upholding the validity of *In the Matter of David Hayes, supra,* Cal. Unemp. Ins. App. Bd. Precedent Benefit Dec. No. P-B-470, is affirmed. Appellant's request for attorney fees pursuant to Code of Civil Procedure section 1021.5 is denied. Costs to respondent.

Gilbert, J., and Yegan, J., concurred.

A petition for a rehearing was denied April 5, 1994, and the opinion was modified to read as printed above.