[No. D053391. Fourth Dist., Div. One. July 15, 2009.]

MESSENGER COURIER ASSOCIATION OF THE AMERICAS et al.,
Plaintiffs and Appellants, v.
CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD,
Defendant and Respondent.

1078

COUNSEL

Littler Mendelson, Robert G. Hulteng and William Hays Weissman for Plaintiffs and Appellants.

Edmund G. Brown, Jr., Attorney General, William L. Carter, Steven J. Green and Leslie Branman Smith, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**HUFFMAN, Acting P. J.**—We review a trial court judgment denying declaratory relief to plaintiffs and appellants Messenger Courier Association of the Americas and California Delivery Association (plaintiff). Plaintiff sought declaratory relief that would have invalidated a precedential decision by the California Unemployment Insurance Appeals Board (the Board). Plaintiff argued the Board erroneously assessed unemployment insurance employer contributions and penalties against a particular employer (a courier service that is not a party to this action), and should not have designated its decision as precedent. (*NCM Direct Delivery v. Employment Development Dept.* (May 8,

2007, Cal. Unemp. Ins. App. Bd. Precedent Tax Dec. No. P-T-495) (*NCM*); Unemp. Ins. Code, § 1127.)[1] Section 409.2 allows interested parties such as plaintiff, a nonprofit professional association of similar employers (not a party to the original administrative proceeding), to file an action for declaratory relief to obtain a judicial declaration regarding the validity of the Board's administrative precedential decision.

The superior court denied plaintiff's request for a declaration that *NCM*, the precedential tax decision, was invalid. The court ruled it was not contrary to law, nor an incorrect application of Supreme Court authority, *S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341 [256 Cal.Rptr. 543, 769 P.2d 399] (*Borello*). The court ruled in favor of the Board's interpretation of the governing law, in particular, section 621, subdivision (b), and plaintiff appeals.[2]

Among other arguments, plaintiff continues to contend that a recent authority reaching similar conclusions to those of the Board here, *Air Couriers Internat. v. Employment Development Dept.* (2007) 150 Cal.App.4th 923, 936 [59 Cal.Rptr.3d 37] (*Air Couriers*), was erroneously decided. In *Air Couriers*, the appellate court upheld the trial court's decision that sufficient evidence supported a finding that certain messenger drivers did not operate as independent contractors, for purposes of assessing employment taxes against the business owner, Air Couriers. The appellate court interpreted the legal standard under the Unemployment Insurance Code, for determination of an employment relationship, to be the same as set forth in *Borello, supra,* 48 Cal.3d 341 (a workers' compensation case), which expressly applied common law analysis of the critical issue of control of the purported employees' work, and further relied on the "secondary factors" identified in the Restatement Second of Agency and in prior case law that had applied those rules in the context of the Unemployment Insurance Code. (*Empire Star Mines Co. v. Cal. Emp. Com.* (1946) 28 Cal.2d 33, 43–44 [168 P.2d 686] (*Empire Star*), overruled on another ground in *People v. Sims* (1982) 32 Cal.3d 468, 480 [186 Cal.Rptr. 77, 651 P.2d 321] (*Sims*); *Tieberg v. Unemployment Ins. App. Bd.* (1970) 2 Cal.3d 943, 949 [88 Cal.Rptr. 175, 471 P.2d 975] (*Tieberg*).)

In light of these authorities, on de novo review, we conclude that the Board's decision applies the proper legal standards and is entitled to precedential effect. We uphold the judgment denying plaintiff's request for declaratory relief that it should not.

---

[1] All further statutory references or references to the code are to the Unemployment Insurance Code unless otherwise indicated.

[2] Section 621 states criteria for defining "employee," including in subdivision (b): "Any individual who, *under the usual common law rules applicable in determining the employer-employee relationship*, has the status of an employee." (Italics added.)

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Administrative Proceedings

The individual adjudication and resolution of factual issues set forth in this precedent tax decision are not subject to direct attack in this appeal. (*Pacific Legal Foundation v. Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101, 109 [172 Cal.Rptr. 194, 624 P.2d 244] (*Pacific Legal Foundation*).) Those underlying facts were that the employer before the Board in this case had hired an association to assist in its conversion and handling of newly designated independent contractor drivers (National Independent Contractors Association). The employer then categorized its drivers as independent contractors, while they were performing the identical work they had carried out when they were previously known as employees. This led to an audit being performed by the Employment Development Department (the Department), and assessment of penalties under section 1127.[3] The employer filed an administrative appeal, which was denied. The employer appealed to the Board and sought reassessment. The Board denied the reassessment request and held the employer liable for penalties under section 1127.

We next outline the basic analytical approach of the Board's decision and the statutory interpretations it made in drawing its conclusions. The Board framed the issue presented as whether the employer had correctly treated its messengers as independent contractors, rather than common law employees, for purposes of payment of unemployment insurance contributions for them under the code. (§§ 976, 984, 976.6, 13020.) In the Board's decision, it first construed section 601 and section 621, subdivision (b) for the purposes of determining whether the delivery drivers who performed work for the employer were independent contractors or employees.[4] The Board initially applied to its record the primary common law test for determining whether service was rendered in employment, by analyzing whether the alleged employer had the right to control the manner and means of accomplishing the desired result. (*Empire Star, supra,* 28 Cal.2d at p. 43.)[5]

The Board's decision then emphasized that the Supreme Court in *Borello, supra,* 48 Cal.3d 341, had applied the common law test of *Empire Star, supra,*

---

[3] Section 1127 authorizes the Department's director to impose a 10 percent penalty if an employer fails to comply with the contributions provisions of the code.

[4] Section 601 defines "employment" as "service . . . performed by an employee for wages or under any contract of hire . . . ."

[5] *Empire Star, supra,* 28 Cal.2d 33, was overruled by *Sims, supra,* 32 Cal.3d 468, only to the extent that it applied res judicata principles to find that a decision of the California Employment Commission was not binding in a subsequent court proceeding because that commission did not exercise "judicial power" under the Constitution. (*Empire Star, supra,* at p. 48; see *Sims, supra,* at p. 480, fn. 8.)

28 Cal.2d 33, "control of details," and stated in a footnote that the Board took this opportunity to resolve an ambiguity created in *Borello, supra*, 48 Cal.3d 341, i.e., whether its reasoning applied to unemployment law as well as the legal context in which *Borello* arose, workers' compensation law. The Board stated that although there were some differences between the two bodies of law, *Borello* "has strong applicability to cases arising under the Unemployment Insurance Code" and its reasoning provides important guidance in such cases, as already recognized by the appellate courts in *Santa Cruz Transportation, Inc. v. Unemployment Ins. Appeals Bd.* (1991) 235 Cal.App.3d 1363, 1370–1371 [1 Cal.Rptr.2d 64] (*Santa Cruz Transportation*) and *Metric Man, Inc. v. Unemployment Ins. Appeals Bd.* (1997) 59 Cal.App.4th 1041, 1049 [69 Cal.Rptr.2d 569]. (*NCM, supra*, Dec. No. P-T-495, at p. 7, fn. 5.)

Next, the Board applied to the facts of its case regarding employment status the secondary factors identified in *Tieberg, supra*, 2 Cal.3d 943, 950, as also set forth in *Borello, supra*, 48 Cal.3d at pages 350 to 351. If the primary test of control is not dispositive, these "secondary" factors may be applied to determine the correct nature of a service relationship. For example, the right to discharge at will, without cause, is probative, as stated in *Tieberg, supra*, 2 Cal.3d at page 949, citing *Empire Star, supra*, 28 Cal.2d at page 43.[6] Other fact-intensive secondary factors were also discussed in the Board's *NCM* decision and found to show employee status, including the uncomplicated nature of the work (driving), the integral nature of the function performed compared to the business of the employer, and the fact that the same work had previously been performed by the same persons when they were designated as employees, rather than independent contractors. (*Tieberg, supra*, at p. 950.)

Further, the Board's decision examined the nature of the independent contractor agreements, and noted that the decisions in *Borello, supra*, 48 Cal.3d 341, and *Santa Cruz Transportation, supra*, 235 Cal.App.3d 1363, were instructive. The Board concluded that the drivers in the case before it, as in those authorities, had been given no real choice about signing the independent contractor agreements. Here, as in *Santa Cruz Transportation*, "[t]he substance of the relationship looked exactly like employment." (*NCM, supra*, Dec. No. P-T-495, at p. 10.) The Board accordingly relied on both the primary and secondary tests set forth in *Borello* to rule that the NCM drivers were employees, not independent contractors. The Board expressly found that the drivers performed an essential function that was integral to the employer's business, and did so in a dependent role. Therefore, the administrative law

---

[6] In *Tieberg, supra*, 2 Cal.3d 943, 946, the employer/producer filed a petition for reassessment with the Board contending that its writers were independent contractors, not employees. After several levels of adjudication, the Supreme Court held that employee status had been established so that assessments for unemployment insurance were properly levied.

judge's findings of employment and assessment of penalties were upheld. Pursuant to section 409, the Board designated its decision as precedential on May 8, 2007.

### B. Superior Court Proceedings, Appeal

On June 27, 2007, plaintiff filed this action in superior court to seek a declaratory judgment that the Board, in the *NCM* precedential opinion summarized above, had applied an incorrect legal standard and had erroneously interpreted the terms of section 621, subdivision (b).[7] In particular, plaintiff attacked the Board's conclusion that the reasoning set forth in *Borello, supra,* 48 Cal.3d 341, and its secondary criteria were applicable in the context of assessments for unemployment insurance taxes. Plaintiff argued that *Empire Star, supra,* 28 Cal.2d 33, supported a reading that taxation provisions must be treated differently from protective social legislation, for purposes of employment status determinations. (*Id.* at p. 43.)

Plaintiff therefore requested declaratory relief that the precedential decision should be decertified as contrary to law and to the Board's employment regulations. (§ 621, subd. (b); Cal. Code Regs., tit. 22, § 4304-1.)[8] The matter was fully briefed and opposed. In support of its position, plaintiff sought judicial notice of state and federal legislative history materials pertaining to employment law, including the history of section 621, subdivision (b). Additionally, plaintiff sought to have the trial court take notice of several other precedential decisions by the Board that dealt with similar issues, as well as a 2004 copy of the field operations manual that the Board may consult in the process of drafting its opinions. (Evid. Code, §§ 451, 452.) The Board objected to these requests and the superior court declined to make a ruling on the requests or the objections.[9]

At argument before the superior court in February 2008, plaintiff appeared to concede (based on the 2007 filing of *Air Couriers, supra,* 150 Cal.App.4th

---

[7] Section 409.2 allows any interested person or organization to "bring an action for declaratory relief in the superior court in accordance with the provisions of the Code of Civil Procedure to obtain a judicial declaration as to the validity of any precedent decision of the appeals board issued under Section 409 or 409.1." Code of Civil Procedure section 1060 et seq. allow for such declaratory relief.

[8] In California Code of Regulations, title 22, section 4304-1, the criteria for deciding whether an individual is an employee for the purposes of sections 621, subdivision (b) and 13020 are stated. The usual common law rules will apply in determining an employer-employee relationship, e.g., the right of the principal to control the manner and means of accomplishing a desired result, or the right to discharge at will. If those are not enough, then subdivisions (a) and (b) of section 4304-1 allow additional factors to be taken into consideration. (See pt. IIB., *post.*)

[9] Pending appeal, plaintiff submitted the same requests for judicial notice, which we deferred for decision and discuss in part IB., *post.*

923) that the distinction between taxing and benefit provisions was not essential to its arguments. Plaintiff nevertheless contended that it was difficult for taxpayers to know what the boundaries of the common law are, since *Borello, supra*, 48 Cal.3d 341, had gone beyond them. Plaintiff's view was that *Air Couriers* was wrongly decided, so that plaintiff was entitled to seek a different ruling in a different appellate district.

In opposition, counsel for the Board stated that the reason for inquiring whether individuals were employees or independent contractors must be taken into account for purposes of examining the independent contractor agreements and for choosing the correct tests in a given factual context. Specifically, the Board has a duty to seek to implement the proper purposes of the relevant code provisions, i.e., worker protection legislation. Counsel argued that the Board had correctly applied *Borello, supra*, 48 Cal.3d 341, to utilize both common law and the multifactor tests that had been developed to supplement the common law, because the facts before the Board required such a comprehensive approach. The Board therefore had not deviated from statutory law, as plaintiff argued.

In its statement of decision, the superior court declined to accept plaintiff's position that the challenged Board decision was incorrectly designated as precedent. The court ruled that the decision in *Air Couriers, supra*, 150 Cal.App.4th 923, was on point. The Board obtained a judgment of dismissal pursuant to the legal rulings and plaintiff appeals. The parties have stipulated that the superior court file may serve as the record on appeal.

## DISCUSSION

Section 621, subdivision (b) defines an employee for purposes of applying the Unemployment Insurance Code as, among other criteria, "[a]ny individual who, *under the usual common law rules applicable in determining the employer-employee relationship*, has the status of an employee." (Italics added.) According to plaintiff, the Board's precedent tax decision in this case erroneously interpreted the authority of *Borello, supra*, 48 Cal.3d 341, which considered the employee definition used in workers' compensation law. Plaintiff argues that the Board's decision in this case went far beyond the usual common law rules, by adopting and applying the secondary criteria for distinguishing between employees and independent contractors, as established by case law, incorporating the principles of the Restatement of Agency (both Rest.2d & Rest.3d).

We first outline the principles for adjudicating and reviewing declaratory relief in this factual context, and then apply them to this administrative precedential tax decision.

I

*APPLICABLE STANDARDS; PRELIMINARY
PROCEDURAL ISSUES*

A. Rules of Review

■ In *Pacific Legal Foundation, supra,* 29 Cal.3d 101, 109, our Supreme Court set forth the procedures to be applied when an appellate court must assess the validity of a precedent benefit or tax decision under section 409.2. "Precedent decisions are akin to agency rulemaking and, therefore, judicial recourse is available under section 409.2 to persons affected by the precedent similar to recourse generally available against regulations. [Citation.] Since the board's precedent decisions simply interpret controlling statutes and regulations, their correctness as precedent relates to law and policy rather than to factual resolutions." (*American Federation of Labor v. Unemployment Ins. Appeals Bd.* (1994) 23 Cal.App.4th 51, 57–58 [28 Cal.Rptr.2d 210] (*AFL-CIO*).)

"The burden of establishing an independent contractor relationship is upon the party attacking the determination of employment. [Citations.]" (*Santa Cruz Transportation, supra,* 235 Cal.App.3d at p. 1367.) Here, the employer and plaintiff sought to establish independent contractor status. We address the facts as resolved by the Board and evaluate the legal issues stemming from them on a de novo basis. (*Borello, supra,* 48 Cal.3d 341, 349.) In such a " 'third-party declaratory action under section 409.2 the courts may only determine whether the board decision accords with the law that would govern were the rule announced articulated as a regulation. There should be no review of the underlying record or new evidence to discover whether the board correctly resolved disputes on adjudicative facts. The board's version of those facts may not be disturbed unless it lacks substantial support on the face of the decision.' " (*AFL-CIO, supra,* 23 Cal.App.4th 51, 58, quoting *Pacific Legal Foundation, supra,* 29 Cal.3d at p. 111.) "However, even though a court will give great weight to the agency's view of a statute or regulation, the reviewing court construes the statutes as a matter of law and will reject administrative interpretations where they are contrary to statutory intent. [Citations.]" (*AFL-CIO, supra,* at p. 58.)

■ These legal issues of interpretation of employer contribution obligations require de novo review, as outlined in *Hunt Building Corp. v. Bernick* (2000) 79 Cal.App.4th 213, 217 [93 Cal.Rptr.2d 883] (*Hunt*): "The interpretation and application of taxing statutes to undisputed facts presents a pure question of law subject to independent review. [Citation.]" The principles guiding statutory construction are likewise well established: " ' "In construing

statutes, we must determine and effectuate legislative intent." [Citation.] "To ascertain intent, we look first to the words of the statutes" [citation], "giving them their usual and ordinary meaning" [citation]. If there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." [Citation.] "Where the statute is clear, courts will not 'interpret away clear language in favor of an ambiguity that does not exist.' [Citation.]" [Citation.]' [Citation.]" (*Ibid.*)

## B. Procedural Points

■ We apply the rules summarized above to determine the correctness of the Board's application of legal rules to the established facts, in terms of its statutory interpretation and statement of precedent. First, however, some preliminary issues require discussion. To some extent, the parties dispute the permissible scope of review on appeal of the precedential effect of the Board's decision. Under Government Code section 11425.60, subdivision (b), an administrative agency such as the Board "may designate as a precedent decision a decision [or part] that contains a significant legal or policy determination of general application that is likely to recur." It is somewhat confusingly provided under Government Code section 11425.60, subdivision (b), that such a designation as precedent "is not subject to judicial review."

Government Code section 11425.10 et seq. comprise the Administrative Adjudication Bill of Rights (enacted in 1995), and set forth the governing procedures for adjudicative proceedings by administrative agencies. The Law Revision Commission comments to Government Code section 11425.60 refer to Unemployment Insurance Code section 409 (enacted in 1953) as an example of existing administrative practices for creating precedential decisions (Cal. Law Revision Com. com., 32D West's Ann. Gov. Code (2005 ed.) foll. § 11425.60, pp. 306–307), and therefore section 409.2 (enacted in 1975) expressly allows declaratory relief as a means of evaluating the validity of precedential decisions. Thus, section 410 provides for finality of a decision of the appeals board, "except for such action as may be taken by a judicial tribunal as permitted or required by law."

These sections should be interpreted to allow, under the specific provisions of section 409.2, limited judicial inquiry on a declaratory relief basis into the underlying legal or policy determinations made by the Board, regardless of any restrictions on review of a designation of precedent. (Gov. Code, § 11425.60, subd. (b); Unemp. Ins. Code, § 410.) The soundness of the legal points made must be subject to judicial correction, for precedential purposes,

if erroneous. (See 9 Witkin, Cal. Procedure (5th ed. 2008) Administrative Proceedings, § 73, pp. 1198–1199; *id.*, § 122, pp. 1248–1249.) Accordingly, the superior court properly had before it the request for declaratory relief, and we likewise must review its determination of "whether the board decision accords with the law that would govern were the rule announced articulated as a regulation." (*Pacific Legal Foundation, supra*, 29 Cal.3d at p. 111.)

■ The superior court declined to take judicial notice as requested by plaintiff of various legislative history materials and precedential decisions. Plaintiff renews this request on appeal. A reviewing court may take optional judicial notice according to the specifications of Evidence Code sections 452 and 459, subdivision (a). (1 Witkin, Cal. Evidence (4th ed. 2000) Judicial Notice, § 46, p. 138.) That is a discretionary power. (*Ibid.*)

The issues on appeal require us to make a de novo determination of whether the Board's decision was in accordance with the applicable statutes and other governing principles in this substantive area. Those declaratory relief questions are susceptible of resolution without resort to legislative history or other precedential decisions of the Board. The Board's field manual is mainly a collection of other such authorities, and likewise unhelpful to the statutory interpretation questions presented. We accordingly deny the judicial notice request.

II

*ISSUES PRESENTED AND APPLICABLE LEGAL DOCTRINES*

According to plaintiff, the plain language of section 621, subdivision (b) required the Board to apply only common law legal standards for worker classification, so that the Board erred when it applied the additional criteria set forth in *Borello, supra*, 48 Cal.3d 341, including consideration of social policies promoted by employee protective legislation (such as the Unemp. Ins. Code). Plaintiff would restrict the reasoning of *Borello* only to workers' compensation cases, or at most, to benefits determinations under the Unemployment Insurance Code, under the theory that such statutory policies have no place in a common law analysis of tax-related issues, such as employer contributions.

To address those arguments, we first set forth basic precepts for such common law analysis, and then inquire into the statutory purposes and how they operate here.

### A. Board's Application of Common Law Principles

 In this line of employment status cases, from *Empire Star* to *Tieberg* to *Borello*, the Supreme Court has consistently relied on the criteria set forth in the Restatement Second of Agency to explain and supplement the common law "control of details" test for employee status. In *Borello*, the court stated it was declining to adopt "detailed new standards" to decide whether a worker is an employee or an independent contractor under the Workers' Compensation Act. (*Borello, supra*, 48 Cal.3d at p. 354.) Rather, the court continued to use common law standards together with Restatement factors about agency that are also relevant and may overlap those pertinent under the common law. (*Ibid.*) "Each service arrangement must be evaluated on its facts, and the dispositive circumstances may vary from case to case." (*Ibid.*)[10]

To analyze whether the same type of flexible and fact-intensive approach may appropriately be used with reference to a different statutory scheme in this case involving employer contributions toward unemployment insurance, we first refresh our recollection about the relationship of common law rules and statutory provisions. In *Victory Oil Co. v. Hancock Oil Co.* (1954) 125 Cal.App.2d 222, 229 [270 P.2d 604], Justice Mosk explained the relationship of written and unwritten laws. "A written law is that which is promulgated in writing and of which a record is in existence. [Citation.] Unwritten law is the law not promulgated and recorded but which is, nevertheless, observed and administered in the courts of the country. It has no certain repository, but is collected from the reports of the decisions of the courts, and the treatises of learned men. [Citation.] [¶] *In this last body of law may be included judicial interpretation of the common law.* In this state the common law, except so far as it is inapplicable to our conditions, or has been modified by statute, still remains in force. [Citation.] The code establishes the law respecting the subjects to which it relates but where the code is silent the common law governs. [Citation.]" (*Ibid.*, italics added.)

 Further conceptual background is provided in 58 California Jurisprudence Third (2004) Statutes, section 4, pages 361 to 363: "The common law is not a codification of exact or inflexible rules for human conduct, for the redress of injuries, or for protection against wrongs, but rather is the embodiment of broad and comprehensive unwritten principles, inspired by natural reason and an innate sense of justice, and adopted by

---

[10] In *Borello*, the court said: " 'Generally, . . . the individual factors cannot be applied mechanically as separate tests; they are intertwined and their weight depends often on particular combinations.' " (*Borello, supra*, 48 Cal.3d at p. 351, quoted in *JKH Enterprises, Inc. v. Department of Industrial Relations* (2006) 142 Cal.App.4th 1046, 1065 [48 Cal.Rptr.3d 563] (*JKH*), as a "comprehensive and authoritative holding.")

common consent for the regulation and government of the affairs of men. Its most significant feature is its inherent capacity for growth and change; although the legislature, of course, may speak to the subject, the primary instruments of this evolution are the courts which are responsible for renewing the common law when necessary and proper. Consequently, except so far as modified or changed by statute, the rules of the common law form the basis of the state's jurisprudence. Rights and liabilities must be determined by those rules, until changed by statutory provision." (Fns. omitted.)

The current version of the Restatement, the Restatement Third of Agency, Introduction, Common Law and Statutes, page 6, provides another explanation of how common law principles of agency and statutory provisions about employment should relate to one another. The main subject of the Restatement Third of Agency is identified by the authors as the common law of agency, but nevertheless, "many references are made to statutory material. *Modern common-law doctrines operate in the context of statutes.* Increasingly, statutes influence common-law development, as explained more fully below. However, despite the significance of all sorts of statutes, the common law of agency retains coherence in two respects. Its basic concepts and doctrines apply in diverse contexts, including those affected by statutes. Agency has also retained structural coherence, despite statutory developments, in large measure because many statutes make implicit or explicit reference to common law or presuppose a background that includes basic common-law doctrines." (*Ibid.*, italics added.)

■ Consistently with the above theories, the Supreme Court in both *Borello, supra,* 48 Cal.3d 341, and *Empire Star, supra,* 28 Cal.2d 33, considered not only the common law employment criteria of the right to control the manner and means of accomplishing the result desired, and the right to discharge at will, but also other factors: "(a) whether or not the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee. [Citations.]" (*Empire Star, supra,* 28 Cal.2d 33, 43–44, cited in *Borello, supra,* 48 Cal.3d at p. 351; see *Tieberg, supra,* 2 Cal.3d 943 at p. 949.)

Likewise, the appellate court in *Santa Cruz Transportation, supra,* 235 Cal.App.3d 1363, 1371–1372, applied both common law rules and

Restatement factors to analyze whether there was substantial evidence to support a finding of independent contractor status of a taxi driver/benefits claimant. There, the issue was whether the claimant was entitled to unemployment/disability benefits as an "employee." The appellate court first considered the common law test for "right to control the means by which the work is accomplished" (*Tieberg, supra*, 2 Cal.3d at p. 950), and then proceeded to the secondary tests as laid out in *Borello, supra*, 48 Cal.3d 341 (Restatement factors). Relying on *Borello*, the court said, "The modern tendency is to find employment when the work being done is an integral part of the regular business of the employer and the worker does not furnish an independent business or professional service relative to the employer. [Citation.]" (*Santa Cruz Transportation, supra*, at p. 1376.) That statement confirms that California courts, as well as administrative agencies, are authorized to apply the "comprehensive" and overlapping tests stated in *Borello* when the issues arise under the Unemployment Insurance Code. (See *JKH, supra*, 142 Cal.App.4th 1046, 1065.)

From these authorities, we glean that our Supreme Court's and other courts' applications of both primary and secondary criteria of employment determinations are in the process of becoming part of the common law of this state, as expressed in judicial decisions such as *Empire Star, supra*, 28 Cal.2d 33, and *Borello, supra*, 48 Cal.3d 341. The purpose of making employment status determinations will vary according to the factual contexts in which the question is presented: "Relationships of agency usually contemplate three parties—the agent, the principal, and third parties with whom the agent interacts in some manner." (Rest.3d Agency, Introduction, p. 3.) In common law tort doctrine, the reason for making an employment determination was to assess whether an employer should be held liable for injury caused by the employee. (*Borello, supra*, at p. 352.) In benefits cases, the reason for making this employment status determination is to evaluate entitlement to the remedial provisions of the statute, to assist those who have become unemployed through no fault of their own. (§ 100.) In part IIB., *post*, we explain that in tax assessment cases, an important reason for making an employment status determination is to ensure fair assessments of tax liability are made against employers, not against those who hire independent contractors. Each of those purposes is consistent not only with the operation of the above stated agency rules under common law, but also as they have been interpreted in the context of employee protective legislation, including unemployment insurance provisions.

We accordingly reject plaintiff's basic premise that the primary or common law test for employment status, regarding the right to control, must operate completely exclusively from the secondary factors that have been identified in other factual contexts as useful for determining employment status. There is nothing in the historical development of the common law to justify confining the statutory terminology in section 621, subdivision (b), to

a narrow common law test for employment, simply because this is an unemployment insurance assessment case. The terms of section 621, subdivision (b) must be interpreted in light of comparable, complementary and overlapping criteria developed in case law, as the Supreme Court authorized in *Borello, supra*, 48 Cal.3d 341, and as the Board correctly ascertained.

## B. Statutory Purposes

Plaintiff appears to contend that the taxation and contribution portions of the unemployment insurance statutory scheme cannot reflect any protective purposes that would appropriately make any difference in an employment status determination. In plaintiff's view, no statutory policy considerations should be allowed in or added to a common law control test for employment.

■ To define those terms, we refer to the description of the protective purposes of unemployment insurance legislation in *Hunt, supra*, 79 Cal.App.4th 213, 218–219 (a case involving federal preemption issues in the context of challenges to unemployment insurance tax assessments). Section 100 et seq. outline the statutory purpose as providing benefits to persons who are unemployed through no fault of their own, "thereby reducing the suffering caused by involuntary unemployment. [Citations.] The Unemployment Insurance Code also provides disability benefits to compensate eligible persons for unemployment caused by injury or sickness. [Citation.] [¶] To finance state unemployment and disability benefits, California requires contributions from both employers and employees. Generally, employers must annually contribute to the unemployment fund based on wages paid to their employees. [Citation.] Employees contribute to the disability fund based on wages received; however, employers must withhold the employees' contributions from their wages. [Citations.]" (*Hunt, supra*, at pp. 218–219, fn. omitted.)

Plaintiff contends that an employer's liability for contributions or assessments should not depend upon an employment status determination that in any way takes into account the overall statutory purposes of the Unemployment Insurance Code. In particular, plaintiff criticizes those references in *Borello, supra*, 48 Cal.3d 341, that support a determination of a worker's employment status in light of secondary criteria such as the economic dependence of the worker, or the integral nature of the work with regard to the business of the employer. Those secondary criteria are sometimes referred to as the "economic reality" test. (*JKH, supra*, 142 Cal.App.4th 1046, 1054; Eggleston et al., Labor and Employment in Cal.: A Guide to Employment Laws, Regulations, and Practices (2d ed. 2009) Independent Contractors, § 15-5 [referencing the *Borello* case as adding an "economic reality test" to the

control test for determining employee status].) Plaintiff believes that this "economic reality test" is unrealistic, citing criticisms of it in federal labor and tax cases, and says that this test does not comport with the definition in section 621, subdivision (b). (E.g., *Secretary of Labor, U.S. Dept. of Labor v. Lauritzen* (7th Cir. 1987) 835 F.2d 1529; *New Deal Cab Co. v. Fahs* (5th Cir. 1949) 174 F.2d 318.)

Plaintiff chiefly relies on language in *Empire Star* to the effect that "[t]he taxing sections of the [Unemployment Insurance Code] are entirely separate from those concerning benefits, and . . . the provisions fixing liability for payments to the fund are to be considered accordingly." (*Empire Star, supra,* 28 Cal.2d at p. 43.) However, those words must be read in context. The Supreme Court was rejecting a broad contention by the employment commission that merely because the Unemployment Insurance Act is social legislation, as distinguished from a taxing statute, it must always be liberally construed, even where the facts would not be supportive of a finding of employment, as opposed to independent contractor status. (28 Cal.2d at pp. 43–47.)

Thus, in *Empire Star*, the Supreme Court upheld the trial court's finding of independent contractor status of certain mine leasers, based on the facts presented about the lack of control exerted over them. The high court acknowledged, "The objects and purposes of the Unemployment Insurance Act are not limited to the raising of revenue. It is a remedial statute and the provisions as to benefits must be liberally construed for the purpose of accomplishing its objects. [Citation.] But there is no basis for the attorney general's contention that because the legislation confers benefits and also imposes taxes, the two parts of the law are inextricably connected. The taxing sections of the legislation are entirely separate from those concerning benefits, and although the benefits are paid from the amount collected as taxes imposed by the act, the provisions fixing liability for payments to the fund are to be considered accordingly." (*Empire Star, supra,* 28 Cal.2d at p. 43.)

■ Remedial legislation should be liberally construed to afford all relief which the Legislature intended to grant, but such an interpretation should not exceed the limits of the statutory intent. (*California Emp. Com. v. Kovacevich* (1946) 27 Cal.2d 546, 549–550 [165 P.2d 917], relying on *Cal. Emp. Com. v. Butte County etc. Assn.* (1944) 25 Cal.2d 624, 630 [154 P.2d 892].) Even where legislation is remedial in character and subject to a liberal construction to effectuate its purpose, the qualifying requirements of the legislation must still be enforced. (*California Emp. etc. Com. v. Hansen* (1945) 69 Cal.App.2d 767, 771–772 [160 P.2d 173].) Thus, "the principle of liberal construction cannot be used as a pretext to create a liability against a person where none exists or appears to have been intended. In construing a remedial statute 'reason must have its just proportion.' [Citation.]" (*Id.* at p. 772.)

"Different tax results flow from whether a worker is classified as an employee or an independent contractor." (*Air Couriers, supra,* 150 Cal.App.4th at p. 926.) Only if an employer-employee relationship exists will an employer be required to make contributions to the unemployment and disability funds. (*Empire Star, supra,* 28 Cal.2d at p. 43.) We read the distinction identified in *Empire Star* between benefits and taxes, to require strict adherence to the rule that before contributions are assessed, an employer-employee relationship must be demonstrated to justify the assessment. In *Empire Star,* the court described the remedial procedures that are available by statute to a person against whom a levy for contributions is erroneously made, as distinguished from the procedures provided by statute for benefits determinations. (*Empire Star, supra,* at pp. 46–47.) Thus, even though the statutory term "contributions" may be considered to be "a euphemistic expression meaning tax exactions," the statutory scheme still provides for remedies to any company or person from whom a tax has been illegally collected upon the ground that it is an employer, if it is not. (*Ibid.*) Although this particular discussion appears in reference to the res judicata effect of a prior administrative determination (which res judicata ruling has since been overruled; *Sims, supra,* 32 Cal.3d 468; see fn. 5, *ante*), *Empire Star* continues to stand for the proposition that the Unemployment Insurance Code has remedial purposes that should be liberally construed in benefits determinations, but nevertheless, for purposes of assessments, proof of employer-employee status is required before the remedial statutory scheme may apply. (*Grant v. Woods* (1977) 71 Cal.App.3d 647, 654 [139 Cal.Rptr. 533].)

There is nothing in this record or in the Board's decision suggesting that there is not a proper basis under Unemployment Insurance Code provisions for liability for employer assessments, independent of any liberal construction of the code regarding benefits, nor that there was any undue focus here upon employee protection, as opposed to employer rights. (See also 58 Cal.Jur.3d, *supra,* Statutes, § 165, pp. 593–595 [remedial statutes].) It is well accepted that statutes creating a new right of action or increasing existing liabilities should be strictly construed in favor of the persons subject to their operation. (*Id.,* § 166, p. 595.) However, plaintiff cannot show why a strict construction of the employer contributions statutes, restricting them to the common law "control of details" test for employment status determinations, should be necessary or proper for the purpose of protecting an employer from liability, merely because those statutes serve to raise revenue for the system as a whole.

The Department's administrative regulation is consistent with the Board's reading of section 621, subdivision (b) in light of the *Borello* reasoning, because it also serves to promote an accurate and fair determination of employment status, by allowing a comprehensive analysis of all the relevant facts. Specifically, California Code of Regulations, title 22, section

4304-1, "Employee Defined, Rules Generally Applicable to Determinations of Employment," first invokes "the usual common law rules applicable in determining an employer-employee relationship," such as considerations of control and the right to discharge an employee at will. However, if the evidence of those criteria is not dispositive, the regulation allows consideration of additional factors "that are significant in relationship to the service being performed," and lists them in detail. (Cal. Code Regs., tit. 22, § 4304-1, subds. (a), (b).) Those include a key factor relied on here (whether the services performed are a part of the regular business of the principal), and other factors, such as which party provides the instrumentalities and facilities for work and controls the premises. The Board could reasonably determine that more than one factor was significant in this case, and its decision is in accordance with its own regulations and the authorities allowing the use of the expanded tests here. (*Pacific Legal Foundation, supra*, 29 Cal.3d at p. 111.)

■ Assuming that a necessary showing of an employer-employee relationship can be made in a given case, and that any challenges to it by the employer should be denied, can it nevertheless be said that the Unemployment Insurance Code has protective purposes that are not focused solely upon employee benefits? We think that since contributions or assessments from employers to the Department completely fund the unemployment insurance program (§ 976), it would be anomalous to treat employee benefits determinations one way and employer assessments another, for purposes of establishing a test for employment status. Wherever possible, courts will harmonize the portions of a statutory scheme to give effect to all. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) A comprehensive employment status determination is required under the Unemployment Insurance Code to ensure that only accurate assessments are made against those properly made liable for employer contributions, i.e., those with employees. Independent contractor work situations are simply not covered by the act. This is not a controversial point and plaintiff has provided no persuasive reason to fault the Board's reasoning in clarifying that both the primary and secondary *Borello* tests have application to unemployment insurance determinations under section 621, subdivision (b), because the secondary criteria have been incorporated into the "usual common law rules" mentioned in that subdivision.

### C. *Air Couriers* Is Persuasive Authority

Plaintiff has raised the same basic arguments as were advanced by the employer in *Air Couriers, supra*, 150 Cal.App.4th 923, 932, to challenge the applicability of *Borello*'s reasoning to unemployment insurance assessment decisions. *Air Couriers* was issued in April 2007, shortly before the Board adopted this *NCM* decision as precedent, and the trial court in this case found that the reasoning of *Air Couriers* was persuasive.

In *Air Couriers*, the employer had brought suit under section 1241 to recover assessments it paid for employees it identified as independent contractors (contributions, income tax, penalties and interest). (*Air Couriers, supra*, 150 Cal.App.4th at p. 926.) The trial court applied the legal standards set forth in *Borello, supra*, 48 Cal.3d 341, and concluded that the evidence supported a finding that the drivers were employees, not independent contractors. The appellate court upheld the judgment on a substantial evidence basis, and concluded that the employer had no basis to argue that the legal standards set forth in *Borello* were inapplicable in the unemployment insurance context. We will not repeat all of its reasoning, but agree with its conclusions, stated as follows: "The aspect of *Borello* that [the employer Sonic] claims makes it inapplicable to the present case is the court's examination of the policy concerns behind the development of workers' compensation law. The court pointed out the distinction between tort policy and social legislation that justifies departures from common law principles when determining whether a worker is covered as an employee. Given this difference, the court concluded that under workers' compensation law, the control test must be applied with deference to the purposes of the protective legislation: 'The nature of the work, and the overall arrangement between the parties, must be examined to determine whether they come within the "history and fundamental purposes" of the statute.' [Citation.] [¶] Sonic claims this deference allowed the *Borello* court to set a 'far more liberal legal standard than existing under common law principles' when determining whether workers are employees or independent contractors. Not so. *Borello* set forth exactly the same secondary factors to be considered in addition to the issue of control that were enumerated in both *Empire Star* and *Tieberg*. The court explicitly declined to adopt 'detailed new standards for examination of the issue,' but stated that these factors 'may often overlap those pertinent under the common law' and that '[e]ach service arrangement must be evaluated on its facts, and the dispositive circumstances may vary from case to case.' [Citation.]" (*Air Couriers*, at pp. 935–936, italics omitted.)

Accordingly, the court in *Air Couriers* rejected the employer's claim that "*Empire Star* stands for the proposition that the deferential public policy standard described in *Borello* only applies in a case concerning benefits and does not apply to a taxation analysis." (*Air Couriers, supra*, 150 Cal.App.4th at p. 936.) Rather, the correct view is that "*Empire Star* did not hold that employment determinations in tax cases are to be treated differently than determinations in benefit cases." (*Ibid.*) We agree. For all of the above reasons, we conclude that the superior court correctly denied the requested declaratory relief to remove the precedential status of the Board's assessment decision in *NCM, supra*, Dec. No. P-T-495.

## DISPOSITION

The judgment of the superior court upholding the validity of *NCM Direct Delivery v. Employment Development Department, supra*, Dec. No. P-T-495, is affirmed. The request for judicial notice is denied. Respondent Board shall recover its costs on appeal.

McDonald, J., and O'Rourke, J., concurred.

Appellants' petition for review by the Supreme Court was denied October 28, 2009, S175707.