77 N.J. Super. 251 (1962)
186 A.2d 121
ELAINE M. LAZAR, CLAIMANT-APPELLANT,
v.
BOARD OF REVIEW, DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, AND SEASHORE TOY AND GIFT SHOP, INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 26, 1962.
Decided November 29, 1962.
*253 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Morgan E. Thomas argued the cause for appellant.
Mr. Edward A. Kaplan argued the cause for respondent Board of Review.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Claimant Elaine M. Lazar appeals from a decision of the Board of Review in the Division of Employment Security holding that the claims she filed on November 7, 1958 and November 9, 1959 for unemployment compensation benefits were invalid because she was not "in employment" during the base years of the claims. Accordingly, she was not entitled to the benefits she received, totalling $1,592.50, and was liable for their refund.
Claimant is the wife of William Lazar, who had operated the Paramount Toy and Gift Shop at 1237 Boardwalk, Atlantic City, N.J., in partnership with his uncle from 1937 until the latter's death in March 1952. Lazar continued *254 the business as sole owner. The Paramount premises were occupied under a lease calling for payment of rent in a fixed sum plus a sliding percentage based on gross sales.
In February 1953 a corporation was organized under the name of Seashore Toy & Gift Shop, Inc., for the purpose of operating the same type of business as Lazar conducted under the Paramount trade name. The stockholders of record were Lazar's mother-in-law, 10 shares; claimant, 9 shares; and the company attorney, 1 share. The mother-in-law and Lazar each contributed half of the capital; claimant and the attorney contributed none. The reason Lazar placed his 10 shares of stock in the name of his wife and the attorney was that he did not want the landlord of the Paramount premises to know of his interest in the Seashore operation; if it knew of the other venture, it might claim that Lazar was diverting business there from the Paramount premises, with consequent loss of rent to it. The Seashore shop opened for business in March 1953 at 1605 Boardwalk. Since Seashore did not have the required number of employees for the required period of time to be subject to the Unemployment Compensation Law (see N.J.S.A. 43:21-19(h) (1)), in May 1953 it filed a voluntary election to come under the act, pursuant to N.J.S.A. 43:21-19(h) (6).
In April 1956 Lazar bought out his mother-in-law's interest in the Seashore business. Instead of taking her ten shares in his own name, he placed nine in his wife's name, and took one share for himself. The result was that claimant then held 18 shares of Seashore, Lazar 1, and the attorney 1, although this last share was actually assigned to claimant. Just before the Seashore lease at 1605 Boardwalk expired at the end of 1957, Lazar, acting on the advice of his attorney and accountant, arranged to have Seashore buy the assets of his Paramount operation and relocate at the Paramount premises at 1237 Boardwalk. No money passed; the transaction was strictly a paper one, accomplished by accounting procedures.
*255 Claimant began work at the Seashore store on January 1, 1958 as a salesperson, although her husband also classified her as an assistant buyer of jewelry. The only other employee was a Mrs. Hyatt, who had been with Lazar since 1946 as jewelry buyer and salesperson. Claimant's pay was not calculated on the basis of a given number of hours; she was carried on the books at a fixed weekly take-home salary of $50. The shop was open the year 'round. On September 28, 1958 claimant ceased work because business was allegedly "very slow." Mrs. Hyatt, however, was not laid off. On November 7, 1958 claimant filed a claim for unemployment benefits, stating that her last employer was the Paramount Toy & Gift Shop. In a signed statement given by her on November 25, 1958 she changed the name of her last employer to Seashore Toy & Gift Shop, Inc., and stated that she was definitely laid off until April 1959. Claimant received weekly benefits at the rate of $35, commencing with the week ending November 13, 1958 and through the week ending May 7, 1959  26 weeks totalling $910, the maximum payments available. She returned to the Seashore shop on May 11, 1959 and worked until November 8, 1959, when she again stopped work. The next day she filed another claim for benefits, describing her unemployment as a "seasonal layoff." On this claim she received benefits at the weekly rate of $35, beginning with the week ending November 15, 1959 and through the week ending March 27, 1960  19 1/2 weeks totalling $682.50  at which time available benefits were exhausted. She returned to work on April 3, 1960.
On September 29, 1960 a representative designated by the Director of the Division of Employment Security made a determination and demand for refund of the $1,592.50 in unemployment benefits received by claimant, pursuant to N.J.S.A. 43:21-16(d). The determination stated that investigation had revealed that as president and chief stockholder of Seashore Toy & Gift Shop, Inc., which was open throughout the year, claimant could have been employed if she so desired. (It is to be remembered that at that time 18 *256 of the 20 shares of outstanding Seashore stock stood in claimant's name.) Claimant appealed to the Appeal Tribunal of the Division which, after a hearing, affirmed the determination and held that she had to repay the benefits paid under her two claims.
On further appeal the Board of Review affirmed the Appeal Tribunal after holding a hearing. However, the Board assigned a different reason for claimant's liability to make a refund. It held that her husband had been the sole owner of the Seashore shop, so that claimant was in fact working for him. To be eligible for benefits, claimant had to show that she had earned her base year wages "in employment." Since N.J.S.A. 43:21-19(i) (7) (C) specifically excluded from the term "employment" service performed by an individual in the employ of a spouse, the Board concluded that claimant had not been "in employment" during the base years of the claims she had filed, and could not use the wages she had earned while performing services for her husband to establish valid claims. Claimant was therefore not entitled to benefits and was held liable to refund all benefits paid under the two claims.
Between the Appeal Tribunal determination and the Board hearing Lazar, mindful of the fact that the Division of Employment Security was not satisfied that his wife did not actually own any stock in Seashore, rearranged the stockholdings in October 1961. Of the 20 outstanding shares, 18 were then placed in his name, 1 was left in his wife's name, and 1 in the name of his attorney. The last two shares were assigned to him for conversion as he saw fit.
In whatever manner the shares of stock may have been distributed before or after October 1961, it is entirely clear that the business was actually owned and operated by Lazar as his own individual enterprise. It had been so owned and operated by him from the time he purchased his mother-in-law's interest in the Seashore company in April 1956.
Claimant argues that she worked for a family corporation and therefore was not excluded from benefits by reason of the *257 exception contained in N.J.S.A. 43:21-19(i) (7) (C). The Board of Review, on the other hand, contends that she was not in the employ of a corporation, but in fact in the employ of her husband.
Our Unemployment Compensation Law was enacted to form an integral part of the unemployment insurance system established by the Social Security Act of 1935, 49 Stat. 620, c. 531. The tax provisions of that act were incorporated in the Internal Revenue Code of 1939, and became known as the Federal Unemployment Tax Act, 26 U.S.C.A. §§ 1600-1611, now chapter 23 of the 1954 Internal Revenue Code, 26 U.S.C.A. §§ 3301-3308. The federal act defines "employment" to mean any service performed after 1954 by an employee for the person employing him, except "service performed by an individual in the employ of his son, daughter, or spouse, and service performed by a child under the age of 21 in the employ of his father or mother." 26 U.S.C.A. § 3306 (c) and (c) (5).
When our Unemployment Compensation Law was originally enacted in 1936, the Legislature followed the pattern of the federal unemployment statute and, in identical language, excluded from the term "employment," service performed in the employ of a spouse. L. 1936, c. 270, § 19(i) (7) (D). The provision now appears, without change, in N.J.S.A. 43:21-19(i) (7) (C). It definitely excludes family employment from the status of "employment" within the Unemployment Compensation Law. One who works for a spouse is not in a position to file a valid claim for unemployment benefits.
The question to be resolved is whether the evidence supports the Board of Review's finding that the Seashore Toy & Gift Shop, which Lazar controlled and operated, was, in fact, his own individual business, and the services performed by claimant were rendered in his employ. The answer is found in Lazar's own testimony. He said that the Seashore business had been his "all along," "the business was mine." Claimant corroborated her husband's testimony as *258 to the corporate structure as well as his sole ownership of the corporate business.
It is apparent from the record that Lazar, as sole owner of the Seashore company and its assets, ignored the corporate form and the fundamental policy of our General Corporation Act. He managed the Seashore shop as though the corporation never existed. The record is devoid of any corporate action at any time. Asked if there were board of directors meetings, Lazar answered, "The board of directors' meetings were as such: the lawyer did most of the operation in that."
The position taken by claimant in her brief, that she was an employee of a family corporation, finds no support in the evidence. Whatever her husband did in connection with his management and operation of the Seashore Toy & Gift Shop was not the act of the corporation.
It is apparent that the employment arrangement was made purely for the benefit of the Lazar family, and could arise only out of the husband-wife relationship  a family employment excluded from the term "employment" under the act. While claimant was working at the Seashore shop she had three children at home, respectively aged 3, 4 1/2 and 6 years, and allegedly in the care of her mother or a babysitter. It is significant that claimant stopped working during the slack season, but just long enough to collect maximum total benefits of 26 weeks before returning to work the first time, and maximum total benefits of 19 1/2 weeks the second time.
Claimant argues that if the Legislature had intended to exclude an individual in her category, it would have done so in express terms, and the Board of Review cannot read into the statute a qualification which does not exist. She refers us to Myerson v. Board of Review, 43 N.J. Super. 196, 202-203 (App. Div. 1957), where this court held that "courts should be hesitant to cut down the scope of a statute because of their own view as to its internal motivations, except where there is some fairly clear justification for so doing. * * * Particularly should this be so when the effect would be to reduce the coverage of an act such as the Unemployment Compensation *259 Law, which * * * we are enjoined to construe liberally in favor of the claimant when we are in doubt as to its purport." She points to the recognized principle that employment security laws are to be liberally construed so as to insure workers against the vicissitudes of enforced unemployment not voluntarily created by the worker, citing Valenti v. Board of Review, 4 N.J. 287, 291-2 (1950).
This court pointed out in Johannesen v. N.J. Department of Labor, etc., 73 N.J. Super. 507, 510 (1962), that while the Unemployment Compensation Law is to be given a liberal construction to subserve its beneficent social policy, "it is equally important that it not be administered or construed in a manner dissipative of moneys not intended by the Legislature to be disbursed without satisfaction of specified prerequisites." Unemployment compensation acts like ours are essentially administrative in character, and are administered by agencies to which, pragmatically, a generous area of discretion is accorded. Charles Headwear, Inc. v. Board of Review, 11 N.J. Super. 321, 328 (App. Div. 1951). A realistic interpretation of the facts and circumstances disclosed by the evidence in a given case is, as we said in Higgins v. Board of Review, 33 N.J. Super. 535, 538 (1955), absolutely essential to the successful administration of the statutory plan, and that function is primarily entrusted by the Legislature to the designated agencies.
What claimant actually contends for is that the Board of Review had no right to disregard the corporate entity, in light of the statutory language contained in N.J.S.A. 43:21-19(i) (7) (C). Although, generally, a corporate entity may not be disregarded, our courts have not hesitated to pierce the corporate veil and determine the true factual situation in a proper case. See, e.g., Irving Investment Corp. v. Gordon, 3 N.J. 217, 223 (1949); Fortugno v. Hudson Manure Co., 51 N.J. Super. 482, 500 (App. Div. 1958); Macfadden v. Macfadden, 46 N.J. Super. 242, 247-8 (Ch. Div. 1957).
*260 Our courts have not dealt with the question of whether the Board of Review may disregard the corporate form in the circumstances here present. Nor has the industry of counsel, or our own research, revealed a case in point under N.J.S.A. 43:21-19(i) (7) (C). However, we have spoken in the analogous area of the employer-employee relationship. Thus, in Provident Institution for Savings in Jersey City v. Division of Employment Security, 32 N.J. 585, 591 (1960), the court said that "no matter what the relationship may be called or how careful the parties to it may be in their attempt to create the impression that it is something other than the statutory employment relationship, * * * we will look through the form to the substance and determine whether the broad definition of employment is met and thus determine whether it is exempt from coverage under the exclusionary provisions of the act." To similar effect, see Gilchrist v. Division of Employment Security, 48 N.J. Super. 147, 154 (App. Div. 1957).
Reference may also be made to Pennsylvania decisions in which, although the statutory provision here considered was not involved, the courts ruled upon the question whether a corporate entity may be disregarded on a claim for unemployment benefits.
In DePriest v. Unemployment Compensation Board of Review, 196 Pa. Super. 612, 177 A.2d 20 (Super. Ct. 1961), the claimants, husband and wife, were the principal officers and controlling stockholders of the corporate employer which owned a seasonally operated hotel. The Board of Review denied unemployment benefits for the weeks when the hotel was closed. In affirming, the court said that the Board was not required to ignore the true state of affairs and regard claimants merely as employees of the corporate entity. They were self-employed persons.
Review, 192 Pa. Super. 598, 162 A.2d 55 (Super. Ct. 1960), the claimant was president of the employer corporation and held 50% of its stock. Because of illness and disagreements
In Hamburg v. Unemployment Compensation Board of *261 with the only other shareholder, he sold his interest to the co-owner, retired from business, and claimed unemployment benefits. The court affirmed the Board's decision disqualifying the claimant and said that the piercing of the corporate veil would expose his half-ownership and control of the business that created his job. He was self-employed and not entitled to benefits when he terminated his business venture. And see Mednick v. Unemployment Compensation Board of Review, 196 Pa. Super. 73, 173 A.2d 665 (Super. Ct. 1961); Roccograndi v. Unemployment Compensation Board of Review, 197 Pa. Super. 372, 178 A.2d 786 (Super. Ct. 1962).
We conclude that the Board of Review's finding that claimant was in the employ of her husband finds more than substantial support in the record. The Board was fully justified, in light of the uncontroverted evidence, in ignoring the corporate fiction and holding that claimant's husband was the sole owner and operator of the Seashore Toy & Gift Shop business where she worked, and that she in fact performed services in his employ.
Claimant argues that the Division of Employment Security cannot compel payments of employment security taxes and then refuse to pay benefits when the right to claim them arises. There was, of course, no such right. All claimant actually contends for is that Seashore has paid taxes without receiving any benefits. In the first place, it is not for her to make such a claim; the claim of taxation without benefit more properly lies in the mouth of her husband, who is the corporation. Secondly, if the husband (corporation) seeks a refund, he may proceed under N.J.S.A. 43:21-14(f), which provides:
"If not later than 2 years after the calendar year in which any moneys were erroneously paid to, or collected by the division, whether such payments were voluntarily or involuntarily made or made under mistake of law or of fact, an employer, employing unit, or employee who has paid such moneys shall make application for an adjustment thereof, the said moneys shall, upon order of the director, be either credited or refunded, without interest, from the appropriate fund. For like cause and within the same period, credit or refund may be so made on the initiative of the director."
*262 Claimant, as determined by the Board of Review, is liable to the Division for a refund of benefits erroneously paid to her under N.J.S.A. 43:21-16(d). Kugel v. Board of Review, 66 N.J. Super. 547, 550 (App. Div. 1961); Tube Reducing Corp. v. State, 1 N.J. 177, 182-3 (1948).
Affirmed.