Filed 7/16/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| TAMARA SKIDGEL,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD,<br><br>      Defendant and Respondent. | A151224<br><br>(Alameda County<br>Super. Ct. No. RG16810609)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT]** |

**THE COURT:**

Appellant's petition for rehearing is denied. It is ordered that the opinion filed on June 14, 2018, shall be modified as follows:

1. On page 4, in part I.A.2., at the end of the eighth line of the first full paragraph (after the quoted phrase and citation reading, " 'on the recipient's behalf as the employer' (*id*., § 12302.2, subd. (a)(2)),"), a new footnote is added that reads:

   Skidgel argues a phrase in Welfare and Institutions Code section 12302.2 that refers to the recipient as "*an* employer" of the IHSS provider (Welf. & Inst. Code, § 12302.2, subd. (a)(1), italics added; see *id.*, § 12302.2, subd. (c)) "means that the statute contemplates more than one employer." However, the statute also refers to the recipient as "*the* employer" of the IHSS provider. (Welf. & Inst. Code, § 12302.2, subd. (a)(1), (2), italics added; see *id.*, § 12302.2, subd. (a)(3) ["the recipient as employer"].) These conflicting uses of definite and indefinite articles in the same statute reveal little about the Legislature's intent.

2. On page 19, in part II.B.3., at the end of the penultimate sentence in the first partial paragraph (after the sentence reading, "We agree that the FLSA and state wage and hour statutory schemes are distinguishable."), a new footnote is added that reads:

   The FLSA and state wage and hour laws define "employ" and "employer" more expansively than the Unemployment Insurance Code or the common

1

law.  (See *Martinez v. Combs* (2010) 49 Cal.4th 35, 57–58 ["suffer or permit to work" is more expansive than the common law]; see 29 U.S.C. § 203(g) [FLSA defining "employ" as "to suffer or permit to work"]; 29 U.S.C. § 203(d) [FLSA defining "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee"]; *Martinez*, at p. 52 [employment relationship for purposes of state wage and hour laws is defined Industrial Welfare Commission wage orders].  As noted ante, the Legislature could not change these definitions in the IHSS context for purposes of applying *federal* wage and hour laws. (See U.S. Const., art. VI, cl. 2.)

The modification effects no change in the judgment.


Date:_____          _____Acting P.J.


2

Filed 6/14/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| TAMARA SKIDGEL,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>CALIFORNIA UNEMPLOYMENT<br>INSURANCE APPEALS BOARD,<br><br>        Defendant and Respondent. | A151224<br><br>(Alameda County<br>Super. Ct. No. RG16810609) |

The In-Home Supportive Services (IHSS) program (Welf. & Inst. Code, § 12300 et seq.) provides in-home services to elderly or disabled persons so that they may avoid institutionalization.  For purposes of the state unemployment insurance system, IHSS service recipients are considered employers of their service providers if the providers are directly paid by the program or the recipient receives IHSS funds to pay their providers (hereafter, Direct Payment Mode).  (Unemp. Ins. Code, § 683.)  Generally, an employee of a close family member (child, parent or spouse) is excluded from unemployment insurance coverage.  (*Id.*, § 631.)  The California Unemployment Insurance Appeals Board (CUIAB) ruled in a precedent decision that, because a close-family-member IHSS service provider under the Direct Payment Mode is employed by the recipient, the provider is subject to the exclusion of Unemployment Insurance Code section 631.[1] (*Matter of Caldera* (2015) CUIAB Precedent Benefit Dec. No. P-B-507 (*Caldera*).)

---

[1] The CUIAB, acting as a whole, may designate certain of its decisions as precedents.  (Unemp. Ins. Code, § 409.)  "Precedent decisions are akin to agency rulemaking . . . .  [T]he board's precedent decisions . . . interpret controlling statutes and regulations, [and] their correctness as precedent relates to law and policy rather than to

1

Appellant Tamara Skidgel, an IHSS provider for her daughter, challenged the validity of *Caldera*, arguing government entities were *joint* employers with the recipient, thereby qualifying providers for unemployment insurance coverage despite the close-family-member exclusion of Unemployment Insurance Code section 631.  The trial court upheld *Caldera*'s validity.  We affirm because we conclude the Legislature, in enacting Unemployment Insurance Code section 683, intended to designate the recipient as the IHSS provider's *sole* employer for purposes of unemployment insurance coverage.

## I.  STATUTORY FRAMEWORK AND BACKGROUND

### A.  *IHSS*

"IHSS is a state social welfare program designed to avoid institutionalization of incapacitated persons.  It provides supportive services to aged, blind, or disabled persons who cannot perform the services themselves and who cannot safely remain in their homes unless the services are provided to them.  The program compensates persons who provide the services [(IHSS providers)] to a qualifying incapacitated person [(IHSS recipient)]." (*Basden v. Wagner* (2010) 181 Cal.App.4th 929, 931; see Welf. & Inst. Code, § 12300, subd. (a).)

#### 1.  *State, County, and Recipient Roles*

The state, counties, and IHSS recipients all play roles in implementing the IHSS program.  (See generally *Guerrero v. Superior Court* (2013) 213 Cal.App.4th 912, 920–922 (*Guerrero*).)  The State Department of Social Services (DSS) sets rules for the program and delegates day-to-day administration of the program to counties.[2]  For example, DSS identifies specific services authorized under the IHSS program (Welf. & Inst. Code, § 12301.1, subd. (a); DSS Manual, § 30-757.1) and creates standardized

_____

factual resolutions."  (*American Federation of Labor v. Unemployment Ins. Appeals Bd.* (1994) 23 Cal.App.4th 51, 57–58.)

[2] The DSS promulgates regulations to implement the statutes, and the IHSS program regulations are found in the State Department of Social Services Manual of Policies and Procedures, Social Services Standards, Service Program No. 7: In-Home Supportive Services (DSS Manual).  (*Bedoe v. County of San Diego* (2013) 215 Cal.App.4th 56, 61.)

2

"hourly task guidelines" and a "uniform needs assessment tool" for county use in assessing individual service needs and service-hour requirements. (Welf. & Inst. Code, §§ 12301.2, subd. (a)(1), 12309; DSS Manual, §§ 30-756, 30-757, 30-761, 30-763.) Following DSS guidelines and protocols, counties process applications for IHSS services, assess applicants' service needs, authorize services and service hours, and periodically reassess recipients' needs. (Welf. & Inst. Code, §§ 12301.1, subd. (b), 12301.15– 12301.17, 12301.2, subd. (b), 12301.21, subd. (b); DSS Manual, §§ 30-759, 30-761, 30-763.) Counties also provide for delivery of IHSS services to recipients and carry out "quality assurance" (fraud detection and prevention), including provider background checks and orientations and potential unannounced home visits to confirm service delivery. (Welf. & Inst. Code, §§ 12301.24, 12305.7–12305.87; DSS Manual, § 30-702.) Recipients "direct [IHSS] authorized services." (Welf. & Inst. Code, § 12300.4, subd. (a).) Recipients who are authorized to receive more than 20 hours per week of certain services are entitled to hire and pay their own providers. (*Id.*, §§ 12303.4, 12304.) Recipients of personal care services are entitled to have their choice of providers be given preference. (*Id.*, §§ 12300, subd. (c), 12304.1.)

    2.    *Service Delivery Methods*

The DSS Manual describes three general ways in which counties may deliver IHSS services: county employment, purchase of service from an agency, and purchase of service from an individual.[3] (DSS Manual, §§ 30-767.1 to 30-761.13.) The purchase of service from an individual includes either direct payments to providers or direct payments to recipients to purchase services. (See DSS Manual, §§ 30-769.73 to 30-769.734; Welf.

---

[3] Welfare and Institutions Code section 12302 specifically authorizes counties to "hire homemakers and other in-home supportive personnel in accordance with established county civil service requirements or merit system requirements for those counties not having civil service, or may contract with a city, county, or city and county agency, a local health district, a voluntary nonprofit agency, a proprietary agency, or an individual or make direct payment to a recipient for the purchase of services."

3

& Inst. Code, § 12302.) We refer to such direct payments collectively as the Direct Payment Mode. Only the Direct Payment Mode is at issue in this case.[4]

When a county delivers services via the Direct Payment Mode, the state must "perform or ensure the performance of all rights, duties, and obligations of the recipient relating to [the] services as required for purposes of unemployment compensation, unemployment compensation disability benefits, workers' compensation, retirement savings accounts, . . . federal and state income tax, and federal old-age, survivors, and disability insurance benefits . . . ." (Welf. & Inst. Code, § 12302.2, subd. (a)(1).) This payroll function includes paying or transmitting contributions, premiums or taxes under these programs "on the recipient's behalf as the employer" (*id.*, § 12302.2, subd. (a)(2)), and making relevant payroll deductions from checks paid directly to providers (*id.*, § 12302.2, subd. (b)). Although DSS issues checks, counties review providers' timesheets and authorize the state's disbursement of funds. (DSS Manual, § 30-769.241, subd. (c).) Recipients must sign providers' timesheets to verify authorized services were provided. (DSS Manual, § 30-769.723.) Counties may change the service delivery method if fraud is detected. (*Id.*, § 30-767.133.)

3. *Public Authorities*

In carrying out IHSS program responsibilities, counties may "(1) Contract with a nonprofit consortium to provide for the delivery of in-home supportive services. [¶] [or] (2) Establish, by ordinance, a public authority to provide for the delivery of in-home supportive services." (Welf. & Inst. Code, § 12301.6, subd. (a); DSS Manual, § 30-767.2.) A public authority or nonprofit consortium may deliver services by contracting with an agency or using the Direct Payment Mode. (Welf. & Inst. Code, § 12301.6, subd. (d).) Under the Direct Payment Mode, the state continues to perform the payroll functions set forth in Welfare and Institutions Code section 12302.2. (*Id.*, § 12301.6,

---

[4] Although *Caldera* did not explicitly specify the service delivery method in that matter, its analysis turns on provisions of the Unemployment Insurance Code that apply only to the Direct Payment Mode. Therefore, we assume *Caldera* is a precedent decision only with respect to cases utilizing the Direct Payment Mode as defined here.

4

subd. (i)(1).)  A public authority or nonprofit consortium must establish a registry of IHSS providers, conduct background checks on potential providers, refer providers to recipients, and train providers and recipients.  (*Id.*, § 12301.6, subd. (e); DSS Manual, § 30-767.23.)  Nonregistry providers selected by recipients must be referred to the public authority or nonprofit consortium "for the purposes of wages, benefits, and other terms and conditions of employment."  (Welf. & Inst. Code, § 12301.6, subd. (h).)  Counties may delegate additional duties to the entities (*id.*, § 12301.6, subd. (e)(5)(A)), or may continue to determine eligibility and authorize services and service-hours for recipients, and review provider timesheets and authorize payment of their checks (see *Guerrero, supra,* 213 Cal.App.4th at p. 924).  Recipients retain any rights they may have to select providers.  (Welf. & Inst. Code, § 12301.6, subd. (c)(1).)

4.      *Statutory Guidance on Employer Status*

The IHSS statutory scheme expressly identifies the "employer" of IHSS providers in some instances.  Each county must act as or establish an employer for purposes of collective bargaining.  (Welf. & Inst. Code, § 12302.25, subd. (a).)  If a county establishes a public authority or contracts with a nonprofit consortium, those entities are deemed the employer for purposes of collective bargaining, but not for purposes of liability due to negligence or intentional torts of providers.  (*Id.*, § 12301.6, subds. (c), (f)(1).)  However, DSS continues to perform payroll services on the recipient's behalf if the Direct Payment Mode is used.  (*Id.*, §§ 12301.6, subd. (i)(1); 12302.2, subd. (a)(2) ["[c]ontributions, premiums, and taxes shall be paid or transmitted [by DSS] *on the recipient's behalf as the employer*" (italics added)].)  The recipient is responsible for directing providers for purposes of weekly overtime pay.  (*Id.*, § 12300.4, subds. (a), (i) [state and counties immune from liability resulting from implementation of weekly overtime rules].)

B.      *Unemployment Insurance*

"The purpose of our state's Unemployment Insurance Code is to provide benefits to persons who are unemployed through no fault of their own, thereby reducing the suffering caused by involuntary unemployment.  ([Unemp. Ins. Code,] § 100; [citations].)

The Unemployment Insurance Code also provides disability benefits to compensate eligible persons for unemployment caused by injury or sickness. ([*Id.*,] § 2625.)" (*Hunt Building Corp. v. Bernick* (2000) 79 Cal.App.4th 213, 218–219.) As remedial legislation, it should be "liberally construed to afford all relief which the Legislature intended to grant" consistent with the plain language of the statutes. (*Messenger Courier Assn. of Americas v. California Unemployment Ins. Appeals Bd.* (2009) 175 Cal.App.4th 1074, 1093.)

"The employer/employee relationship determines who must make contributions to the unemployment and disability funds. [Citation.] Where an employee performs services for an employer, the employer is required to make contributions and withhold taxes; where an independent contractor performs services for a principal, the principal is not required to withhold taxes or make contributions." (*Hunt Building Corp. v. Bernick, supra,* 79 Cal.App.4th at p. 219.) Statutory definitions of "employment," "employee," and "employer" limit the scope of coverage.

"[E]mployment" is defined broadly as "service[] . . . performed by an employee for wages or under any contract of hire, written or oral, express or implied." (Unemp. Ins. Code, § 601.) "[D]omestic service in a private home," however, does not qualify as employment for unemployment insurance purposes unless it is "performed for an employing unit or a person who paid in cash remuneration of one thousand dollars ($1,000) or more to individuals employed in the domestic service in any calendar quarter . . . ." (*Id.*, § 629, subd. (a); see *id.,* § 682, subd. (a) [corresponding definition of "employer"].) Unemployment Insurance Code section 631 further excludes from "employment" any "service performed by a child under the age of 18 years in the employ of his father or mother, or service performed by an individual in the employ of his son, daughter, or spouse, except to the extent that the employer and the employee have, pursuant to [Unemployment Insurance Code s]ection 702.5, elected to make contributions to the Unemployment Compensation Disability Fund."

The definition of "employee" includes "[a]ny individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the

6

status of an employee." (Unemp. Ins. Code, § 621, subd. (b).) " 'Employer' means any employing unit,[5] which for some portion of a day, has within the current calendar year or had within the preceding calendar year in employment one or more employees and pays wages for employment in excess of one hundred dollars ($100) during any calendar quarter." (*Id.*, § 675.) Critically for this case, Unemployment Insurance Code section 683 specifically addresses IHSS service delivery: " 'Employer' also means any employing unit which employs individuals to perform domestic service comprising in-home supportive services . . . and pays wages in cash of one thousand dollars ($1,000) or more for such service during any calendar quarter . . . , and is one of the following: [¶] (a) *The recipient of such services, if the state or county makes or provides for direct payment to a provider chosen by the recipient or to the recipient of such services for the purchase of services* [(*i.e., Direct Payment Mode*)], subject to the provisions of Section 12302.2 of the Welfare and Institutions Code. [¶] (b) The individual or entity with whom a county contracts to provide in-home supportive services. [¶] (c) Any county which hires and directs in-home supportive personnel in accordance with established county civil service requirements or merit system requirements for those counties not having civil service systems." (Italics added.)

C.     *Employer Status of IHSS Recipients*

Authorities addressing whether IHSS recipients are sole or joint employers of their service providers have not been consistent, and differing conclusions have been reached depending on context. In 1983, the Ninth Circuit Court of Appeals held that, in counties providing funds to recipients to pay their own IHSS providers, the state and counties were joint employers with recipients for purposes of the Fair Labor Standards Act of 1938 (FLSA) (29 U.S.C. § 201 et seq.) and thus liable for FLSA violations. (*Bonnette v. California Health and Welfare Agency* (9th Cir. 1983) 704 F.2d 1465, 1467–1468, 1470, disapproved on other grounds by *Garcia v. San Antonio Metro. Transit Auth.* (1985)

---

[5] Unemployment Insurance Code section 135 provides, as relevant here: " 'Employing unit' means an individual or type of organization that has in its employ one or more individuals performing services for it within this state . . . ."

7

469 U.S. 528, 539.) More recently, Division Two of this district followed *Bonnette* and held that a county and public authority using the Direct Payment Mode were joint employers with an IHSS recipient under the FLSA and thus liable for FLSA violations. (*Guerrero, supra,* 213 Cal.App.4th at pp. 924, 937; see *id.* at pp. 926–938.) The court also held the county and public authority were joint employers with the recipient under state wage and hour laws.[6] (*Id.* at pp. 945–951.) In 1984, the Third District Court of Appeal held that the state and county (as the state's agent) were joint employers with the recipients for purposes of workers' compensation coverage, thus allowing providers to aggregate hours worked for multiple recipients and thereby meet the minimum hours required for domestic workers' coverage. (*In-Home Supportive Services v. Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 720, 725–727, 729–730 (*In-Home Supportive Services*).)

In 1985, the Attorney General provided an opinion for a state legislator on whether, when the recipient hires and supervises the provider, the state or county are joint employers with the recipient for other purposes. (68 Ops.Cal.Atty.Gen. 194 (1985).) With respect to unemployment insurance, the Attorney General concluded the recipient was the sole employer.[7] (*Id.* at p. 198.)

Prior to *Caldera*, a 2014 nonprecedent four-to-one CUIAB decision ruled joint employment existed where a county with an established a public authority made direct payments to the provider (the recipient's mother), and thus the provider qualified for unemployment benefits despite Unemployment Insurance Code section 631's express exclusion of family-member employment. (CUIAB Case No. AO-336919 (*Ostapenko*).)

---

[6] The state was not a party to the case. (*Guerrero, supra,* 213 Cal.App.4th at p. 917.)

[7] The Attorney General reasoned that joint employment is not recognized in the unemployment insurance context. (68 Ops.Cal.Atty.Gen., *supra,* at p. 198.) Because we conclude that the Legislature specifically intended IHSS recipients to be the sole employers of IHSS providers for purposes of unemployment insurance, we need not and do not consider the issue of whether joint employment is otherwise recognized in the unemployment insurance context. We express no view of the persuasiveness of the Attorney General's opinion.

8

In contrast, an overlapping panel in *Caldera* ruled on similar facts that a close-family-member IHSS provider was expressly excluded from unemployment coverage pursuant to Unemployment Insurance Code section 631. The panel questioned whether joint employment applied in unemployment insurance law, and concluded that, even assuming joint employment, Unemployment Insurance Code section 631 expressly excluded close-family-member IHSS providers.[8] (*Caldera, supra,* CUIAB Precedent Benefit Dec. No. P-B-507, at p. 8.) In October 2015, the CUIAB adopted *Caldera* as precedent.[9] (See Unemp. Ins. Code, § 409.)

D. *Instant Litigation*

In April 2016, Legal Services of Northern California filed a complaint on behalf of Skidgel challenging the validity of *Caldera* as precedent. Skidgel sued under Unemployment Insurance Code section 409.2,[10] which authorizes a declaratory relief

---

[8] *Caldera* also questioned the argument, accepted in the *Ostapenko* decision, that a public authority qualified as a second employer under Unemployment Insurance Code section 683, subdivision (b). The trial court did not reach the question.

Skidgel indirectly raises the same argument. We agree that Unemployment Insurance Code section 683 is intended to cover all IHSS providers, including those working in counties with public authorities. However, a public authority may deliver services via Direct Payment Mode or by contracting with agencies. (Welf. & Inst. Code, § 12301.6, subd. (d).) A public authority's providers, therefore, will be covered by Unemployment Insurance Code section 683 subdivision (a) (Direct Payment Mode) or subdivision (b) (contract mode). We disagree that subdivision (b) refers to a contract between a county and a public authority.

[9] The CUIAB received comments about whether to adopt *Ostapenko* or *Caldera* as a precedent decision. DSS and the Employment Development Department (EDD; see Unemp. Ins. Code, § 301 [state agency charged with administering unemployment insurance compensation program]) supported adoption of *Caldera* as precedent. Legal Services of Northern California, the Legal Aid Society—Employment Law Center, and the Service Employees International Union supported adoption of *Ostapenko* as precedent. In the case before us, we accepted amici curiae appearances in support of Skidgel by the National Employment Law Project, the United Domestic Workers of America, AFSCME Local 3930, AFL-CIO, and the Service Employees International Union Local 2015.

[10] Unemployment Insurance Code section 409.2 provides: "Any interested person or organization may bring an action for declaratory relief in the superior court in

action challenging the validity of a precedent decision. She alleged she was an IHSS provider for her daughter and anticipated seeking unemployment insurance if her employment ended. Based on a joint record consisting of the comments submitted to the CUIAB and the parties' trial court briefs, the trial court affirmed the validity of *Caldera* and entered judgment for the CUIAB.

## II.　DISCUSSION

A.　*Standard of Review*

"[I]n a third-party declaratory action under [Unemployment Insurance Code] section 409.2 the courts may only determine whether the board decision accords with the law that would govern were the rule announced articulated as a regulation. There should be no review of the underlying record or new evidence to discover whether the board correctly resolved disputes on adjudicative facts." (*Pacific Legal Foundation v. Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101, 111; see *Messenger Courier Assn. of Americas v. California Unemployment Ins. Appeals Bd., supra,* 175 Cal.App.4th at pp. 1087–1088 [reconciling Unemp. Ins. Code, § 409.2 authorization of judicial review with apparent bar of judicial review in Gov. Code, § 11425.60]; see Unemp. Ins. Code, § 409 [referring to Gov. Code, § 11425.60].)

"In deciding whether the board's application of governing law may be upheld, reviewing courts will apply settled standards. Statutory construction is a matter of law for the courts [citation], and administrative interpretations must be rejected where contrary to statutory intent." (*Pacific Legal Foundation v. Unemployment Ins. Appeals Bd., supra,* 29 Cal.3d at p. 111.) "[U]nlike quasi-legislative regulations adopted by an agency to which the Legislature has confided the power to 'make law,' and which, if authorized by the enabling legislation, bind this and other courts as firmly as statutes themselves, the binding power of an agency's *interpretation* of a statute or regulation is contextual: Its power to persuade is both circumstantial and dependent on the presence or

accordance with the provisions of the Code of Civil Procedure to obtain a judicial declaration as to the validity of any precedent decision of the appeals board issued under Section 409 or 409.1."

10

absence of factors that support the merit of the interpretation." (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7.) Those factors include " 'the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade . . . .' " (*Id.* at p. 14, italics omitted.) Here, the CUIAB thoroughly considered the issue—soliciting comments from interested constituencies and considering application of the issue to at least four adjudicated cases—but has not maintained a consistent interpretation over time, as it acknowledged in *Caldera* itself. (*Caldera, supra,* CUIAB Precedent Benefit Dec. No. P-B-507, at p. 3.) Our deference to the decision, therefore, primarily turns on the validity and persuasiveness of its reasoning.

We apply well-established rules of statutory interpretation. "When construing a statute, we must 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] The words of the statute are the starting point. 'Words used in a statute . . . should be given the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . .' [Citation.] If the language permits more than one reasonable interpretation, however, the court looks 'to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' [Citation.] After considering these extrinsic aids, we 'must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977–978.)

B.    *The Legislature Has Designated Recipients the Sole Employers Under Direct Payment Mode for Purposes of Unemployment Insurance*

The CUIAB argues, and the trial court agreed, the plain language of IHSS statutes and the Unemployment Insurance Code clearly establish that under the Direct Payment Mode the IHSS recipient is the sole employer of the provider, and a provider of services

11

to a recipient who is a close family member is therefore excluded from unemployment insurance coverage by Unemployment Insurance Code section 631. Although the relevant statutes are not patently clear, we conclude the best reading of the statutes, in light of their plain language and legislative history, is that IHSS recipients were intended to be the sole employers of IHSS providers under the Direct Payment Mode for purposes of unemployment insurance coverage.[11] It follows that Unemployment Insurance Code section 631 excludes IHSS providers who serve close-family-member recipients.

       1.     *Statutory Language*

Unemployment Insurance Code section 683 defines "employer" for purposes of unemployment insurance coverage to "also" mean (1) an employer of IHSS providers who (2) meets the $1,000 wage threshold generally applicable to domestic workers (cf. Unemp. Ins. Code, § 629, subd. (a)) and (3) "is . . . [¶] . . . [t]he recipient" where IHSS services are provided through the Direct Payment Mode. (*Id.*, § 683, subd. (a).) Drawing attention to the use of "also" before "employer" in the definition, Skidgel argues the statute does not unambiguously exclude joint employment by both the recipient and government entities. We agree, but note the most natural reading of the plain language, whose sole apparent purpose is to define the employer of IHSS providers for purposes of unemployment insurance coverage, is that the Legislature intended to designate only the named entities or individuals as employers and not silently include others as well. Skidgel also relies on the code's catchall provision that " '[e]mployee'[12] means . . . [¶] . . . [¶] . . . [a]ny individual who, under the usual common law rules applicable in

_____

[11] Because we reach this conclusion, we need not address *Caldera*'s argument, adopted by the trial court, that Unemployment Insurance Code sections 631 and 683 exclude close-family-member IHSS providers from coverage even if government entities are otherwise joint employers with recipients. (*Caldera, supra,* CUIAB Precedent Benefit Dec. No. P-B-507, at p. 4.)

[12] Under the Unemployment Insurance Code, section 621, subdivision (b) defines "employee" and section 683 defines "employer"; however, section 675 of the statutory scheme essentially incorporates the definition of "employee" into its foundational definition of "employer": "any employing unit, which . . . has . . . in employment one or more employees" meeting a certain wage threshold. (Italics added.)

12

determining the employer-employee relationship, has the status of an employee" (*id.*, § 621, subd. (b)) to argue government entities are *also* employers of IHSS providers under a joint employment theory. However, section 683 is more specific and takes precedence to the extent it conflicts with section 621, subdivision (b). (Code Civ. Proc., § 1859; *Fleming v. Kent* (1982) 129 Cal.App.3d 887, 891.)

Similarly, the most natural reading of Welfare and Institutions Code section 12302.2 is that the Legislature intended the state to perform simply a payroll function on behalf of the recipient as the sole employer of IHSS providers under the Direct Payment Mode. The statute provides that, in Direct Payment Mode, DSS "shall perform or ensure the performance of all rights, duties, and obligations *of the recipient* relating to [IHSS] services as required for purposes of unemployment compensation, [and other public benefits or tax liabilities.] . . . [¶] . . . Contributions, premiums, and taxes shall be paid or transmitted *on the recipient's behalf as the employer* . . . . [¶] . . . Contributions, premiums, and taxes paid or transmitted *on the recipient's behalf* for unemployment compensation, workers' compensation, and *the employer's share* of federal old-age, survivors, and disability insurance benefits shall be payable in addition to the maximum monthly amount [authorized by statute for IHSS services for the recipient]. . . . [¶] . . . [¶] . . . Funding for the costs of administering this section and for contributions, premiums, and taxes paid or transmitted *on the recipient's behalf as an employer* pursuant to this section shall qualify, where possible, for the maximum federal reimbursement. . . ." (Welf. & Inst. Code, § 12302.2, subds. (a)(1)–(3), (c), italics added.) This statutory language strongly implies the Legislature intended DSS to perform only an administrative function on behalf of the recipient as the sole employer, and to relieve the recipients of these administrative burdens.

Finally, as *Caldera* reasons and the trial court ruled, the fact that Unemployment Insurance Code section 631 includes an express exception to the close-family-member exclusion supports an inference that the Legislature did not intend other exceptions to be implied. " '[I]f exemptions are specified in a statute, we may not imply additional exemptions unless there is clear legislative intent to the contrary.' " (*Caldera, supra,*

13

CUIAB Precedent Benefit Dec. No. P-B-507, at p. 7, quoting *Sierra Club v. State Bd. of Forestry* (1994) 7 Cal.4th 1215, 1230; see *Caldera*, at p. 5.)[13]

In sum, the most natural reading of Unemployment Insurance Code sections 631, 683, and Welfare and Institutions Code section 12302.2 is that the Legislature intended the recipient to be the sole employer of IHSS providers under the Direct Payment Mode for purposes of unemployment insurance.

2.      *Statutory Purpose and Legislative History*

Our reading of the plain language of the statutes is consistent with the statutes' purpose as revealed by their legislative history.  Therefore, we adopt what we believe to be the natural reading.

a.      *Unemployment Insurance Code Section 631*

Unemployment Insurance Code section 631 was enacted in 1953 and has rarely been applied or construed in published judicial or administrative decisions.  In *Miller v. Department of Human Resources Dev.* (1974) 39 Cal.App.3d 168, 172, the court held that the purpose of this section is to prevent "depletions of the fund . . . result[ing] from a lack of or inability to control eligibility"—i.e., prevent fraud arising from collusion between family members who control the employment relationship.  A New Jersey case illustrates the potential collusion problem alluded to in *Miller*.  In *Lazar v. Bd. of Review* (1962) 77 N.J. Super. 251 [186 A.2d 121], the claimant worked in her husband's store (operating through a sham corporation).  She took "seasonal lay off[s]" for the maximum period in which she could collect unemployment benefits.  (*Id.* at p. 255.)  The court held the claimant was ineligible for benefits, explaining:  "It is apparent that the employment arrangement was made purely for the benefit of the Lazar family, and could arise only out of the husband-wife relationship—a family employment excluded from the term

---

[13] The trial court considered but rejected Skidgel's argument that the state's payment of unemployment insurance contributions pursuant to Welfare and Institutions Code section 12302.2 was *equivalent* to the express exception in Unemployment Insurance Code section 631 and thus qualified as an *implied* exception under the statute. Skidgel does not renew the argument on appeal.

14

'employment' under [New Jersey law]. While claimant was working at the [store] she had three children at home, respectively aged 3, 4 1/2 and 6 years, and allegedly in the care of her mother or a babysitter. It is significant that claimant stopped working during the slack season, but just long enough to collect maximum total benefits of 26 weeks before returning to work the first time, and maximum total benefits of 19 1/2 weeks the second time." (*Id.* at p. 258.)

Skidgel maintains "[t]here is almost no risk of collusion between an employee and a child or spouse to fraudulently obtain [unemployment insurance] benefits in the IHSS context because of the county or public authority's control . . . in hiring, compensating, and setting the hours of an IHSS worker." However, the Legislature has demonstrated significant concern about fraud and collusion in the IHSS program despite extensive government involvement. Counties are required to perform criminal background checks on providers (Welf. & Inst. Code, §§ 12301.6, subd. (e)(2)(A)(i), 12305.86, 12306.5), audit their IHSS records to identify fraud and recapture overpayments (*id.*, §§ 12305.7– 12305.83), and bar providers, recipients, and authorized representatives of recipients from the program if they are convicted of certain types of government fraud (*id.*, §§ 12300.3, subd. (f)(1), 12301.6, subd. (e)(2)(A)(ii)–(iii), (m)(1)(C), 12305.81; 12305.87). Providers must attend program orientations and both recipients and providers must certify the accuracy of providers' timesheets. (*Id.*, §§ 12301.24, 12301.25.) The Legislature has also enacted legislation specifically governing when close family members may receive compensation as IHSS providers despite having a preexisting legal duty to care for the recipients. (*Id.*, §§ 12300, subd. (e), 12301, subd. (a).) These concerns about fraud, collusion and close family members' duty of care are consistent with the anti-collusion purpose of Unemployment Insurance Code section 631 and thus support its application to close-family-member IHSS providers.[14]

---

[14] Skidgel has argued an unemployment insurance regulation demonstrates the EDD does not view joint employment as incompatible with Unemployment Insurance Code section 631's exclusion of close-family-member employment. The regulation provides that coverage is not barred for an employee of a partnership with a close-family-

15

b.       *Unemployment Insurance Code Section 683 and Welfare and Institutions Code Section 12302.2*

In 1978, the Legislature enacted Unemployment Insurance Code section 683 and Welfare and Institutions Code section 12302.2, while also amending Labor Code section 3351.5, to add subdivision (b) (analogous to Unemp. Ins. Code, § 683 but applicable to workers' compensation coverage).  (Stats. 1978, ch. 463, §§ 2–4, pp. 1571–1572.)  The legislation came not long after domestic workers were first added to the unemployment and workers' compensation statutory schemes.  (See, e.g., Stats. 1975, ch. 1263, § 4, p. 3314; Stats. 1977, ch. 17, § 17, p. 30; Stats. 1978, ch. 2, § 12 et seq., p. 12.)  Assembly Bill No. 3028 (1977–1978 Reg. Sess.) was proposed in response to administrative and court decisions that counties were the employers of IHSS providers under Direct Payment Mode.  To forestall counties from responding to these decisions by either contracting out IHSS services or using civil service employees as IHSS providers, thereby greatly increasing state costs, the legislation authorized the state to serve as the payroll servicer for recipients and assume for itself those employer costs, resulting in a smaller net cost increase to the state.[15]  The clear intent was to relieve counties of the burdens of employer status in the IHSS program altogether.

member partner if at least one other partner is not a close family member.  (Cal. Code Regs., tit. 22, § 631-1(e).)  Rather than an *exception* to the family exclusion of Unemployment Insurance Code section 631 for joint employment, this regulation *extends* the exclusion to employment by a partnership consisting solely of close-family-member partners to avoid a subterfuge of the exclusion.  (See *Caldera, supra,* CUIAB Precedent Benefit Dec. No. P-B-507, at pp. 7–8, distinguishing *Matter of Lembo* (1971) CUIAB Precedent Benefit Dec. No. P-B-111.)  If anything, this regulation tends to support our view that the anti-collusion policy underlying the exclusion is taken seriously by the designated enforcement agency.

[15] See Assembly Ways and Means Committee, Analysis of Assembly Bill No. 3028 (1977–1978 Reg. Sess.) as amended June 8, 1978, pages 1–2; Department of Social Services, Enrolled Bill Report on Assembly Bill No. 3028 (1977–1978 Reg. Sess.) prepared for Governor Brown (July 7, 1978) pages. 1–2; Employment Development Department, Enrolled Bill Report on Assembly Bill No. 3028 (1977–1978 Reg. Sess.) prepared for Governor Brown (July 10, 1978) page 1; Department of Finance, Enrolled Bill Report on Assembly Bill No. 3028 (1977–1978 Reg. Sess.) prepared for Governor Brown (July 13, 1978) page 2.  All of these materials are proper sources of legislative

Some legislative history materials reflect a concern that Welfare and Institutions Code section 12302.2 could lead to a determination that the state was the affected IHSS providers' employer.[16] This expressed concern, however, was not necessarily inconsistent with an intent to make the recipient the sole employer for purposes of *unemployment insurance*. The legislative history demonstrates that the Legislature was concerned about counties' employer liability for social security as well as unemployment insurance and workers' compensation payments. (See Employment Development Dept., Enrolled Bill Rep. on Assem. Bill No. 3028 (1977–1978 Reg. Sess.) prepared for Governor Brown (July 10, 1978) p. 1.) Welfare and Institutions Code section 12302.2, subdivision (a)(1), expressly requires DSS to perform "federal old-age, survivors, and disability insurance" obligations on behalf of recipients as well as unemployment insurance and workers' compensation obligations. Because social security is a matter of federal law, the Legislature could not unilaterally designate the recipient as the sole employer for social security purposes. Therefore, even though we conclude the Legislature intended to designate the recipient as the sole employer for purposes of unemployment insurance (a matter of state law),[17] there remained a danger the state

intent. (See *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 31–37; but see *In-Home Supportive Services, supra,* 152 Cal.App.3d at p. 739, fn. 23 [materials in governor's chaptered bill file of dubious value in ascertaining legislative intent].)

[16] See Assembly Office of Research, third reading analysis of Assembly Bill No. 3028 (1977–1978 Reg. Sess.) as amended June 8, 1978, page 1 ("[a]ccording to the Assembly Human Resources Committee analysis, the adoption of this bill could make the state the employer of 55,000 service providers"); Department of Finance, Enrolled Bill Report on Assembly Bill No. 3028 (1977–1978 Reg. Sess.) prepared for Governor Brown (July 13, 1978) page 2 ("[f]inance staff are concerned that State responsibility for assuring performance of the payrolling function may result in the courts finding the State the 'employer' of IHSS providers").

[17] Our unemployment insurance law is designed to meet federal requirements for assistance in the administration of unemployment benefits. (See Unemp. Ins. Code, § 101; Stats. 1978, ch. 2, § 108, p. 52; compare Unemp. Ins. Code, § 629, subd. (a) with 26 U.S.C. § 3306(a)(3) [extending coverage to domestic employees].) Theoretically, federal law could restrain the Legislature's ability to unilaterally designate employers for

would be deemed the sole or joint employer for purposes of social security. An expression of concern regarding possible consequences is not an expression of intent to achieve that result.

In sum, we find the natural reading of the statutes to be consistent with the legislative history. We therefore conclude that Unemployment Insurance Code section 683 and Welfare and Institutions Code section 12302.2 identify IHSS recipients the sole employers of IHSS providers in the Direct Payment Mode. An IHSS provider who provides service to a close-family-member recipient consequently is excluded from unemployment coverage under Unemployment Insurance Code section 631.

3. *Conflict with* In-Home Supportive Services

We recognize that our holding is, at least implicitly, in conflict with the holding of *In-Home Supportive Services, supra,* 152 Cal.App.3d 720. Although we address unemployment insurance coverage and *In-Home Supportive Services* addresses workers' compensation coverage, the language and legislative history of the relevant statutes in the two statutory schemes is similar.

*Caldera* concludes, and the trial court agreed, that *Bonnette v. California Health and Welfare Agency, supra,* 704 F.2d 1465, *In-Home Supportive Services, supra,* 152 Cal.App.3d 720, and *Guerrero, supra,* 213 Cal.App.4th 912, are unpersuasive in the unemployment insurance context in part because they each address "a statutory scheme very different from the unemployment insurance statutes and relies upon a definition of 'employer' that differs from the definition used in the unemployment insurance law. Moreover, neither of those statutory schemes contains any exclusion similar to that set forth in [Unemployment Insurance Code] section 631." (*Caldera, supra,* CUIAB Precedent Benefit Dec. No. P-B-507, at p. 5.) The CUIAB makes similar arguments on appeal. We agree that the FLSA and state wage and hour statutory schemes are

purposes of state unemployment law. However, we are not aware of any interpretation of federal unemployment law that conflicts with state law designating an IHSS recipient as the sole employer of an IHSS provider for purposes of unemployment insurance.

18

distinguishable.  Whether the workers' compensation scheme is materially distinguishable is a closer question.

Labor Code section 3351 defines "employee" to include "every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed."  (Cf. Unemp. Ins. Code, § 601 [defining "employment"].)  Labor Code sections 3351, subdivision (d), and 3352, subdivision (a)(8), together include domestic service in a private home when earnings (or, in the workers' compensation context, hours) exceed certain thresholds.[18]  (Cf. Unemp. Ins. Code, § 629, subd. (a).)  However, similar to Unemployment Insurance Code section 631's exclusion of close family members from employment, Labor Code section 3352, subdivision (a)(1) excludes any "person defined in [Labor Code section 3351, subdivision (d)] who is employed by his or her parent, spouse, or child."[19]  Labor Code section 3351.5, subdivision (b), provides that "employee" includes "[a]ny person defined in [Labor Code section 3351 subdivision (d)] who performs domestic service comprising in-home supportive services . . . .  For purposes of [Labor Code s]ection 3352, such person shall be deemed an employee of the

---

[18] Labor Code section 3351, subdivision (d) provides, "Except as provided in [Labor Code section 3352, subdivision (a)(8)], any person employed by the owner or occupant of a residential dwelling whose duties are incidental to the ownership, maintenance, or use of the dwelling, including the care and supervision of children, or whose duties are personal and not in the course of the trade, business, profession, or occupation of the owner or occupant" is an employee.  Labor Code section 3352, subdivision (a)(8) excludes such persons if, within certain calendar quarters, the "employment was, or was contracted to be, for less than 52 hours" or "for wages of not more than [$100]."

[19] Unemployment Insurance Code section 631 excludes "services performed . . . in the employ of" a close family member from "employment" and Labor Code section 3352, subdivision (a)(1) excludes a "person . . . employed by" a close family member from the definition of "employee."  We see no material distinction in the wording of the two statutes.

19

recipient of such services for workers' compensation purposes" under the Direct Payment Mode. (Cf. Unemp. Ins. Code, § 683.)[20]

The focus of *In-Home Supportive Services* was the wage and hour thresholds for workers' compensation coverage. The IHSS provider's work with the recipient in that case had not exceeded the quarterly minimum work hours and wages required for coverage pursuant to Labor Code section 3352, but the provider met the requirement if her work for two other recipients in the relevant time period was counted. DSS and its insurer challenged a workers' compensation award, arguing the provider's employment relationship with the recipient was the exclusive ground of coverage. Affirming the award, the reviewing court found that the workers' compensation law provided for coverage based upon the state's status as a joint employer of the provider. (*In-Home Supportive Services, supra,* 152 Cal.App.3d at p. 725.) To reach this conclusion, the court was required to construe provisions of the Labor Code governing workers' compensation coverage for domestic employment (including Lab. Code, §§ 3351, 3351.5, 3352). (*In-Home Supportive Services,* at p. 727.)

We do not quarrel with *In-Home Supportive Services*'s discussion and application of well-established common law principles and the broad statutory reach of Labor Code section 3351 in establishing joint employment in that matter (*In-Home Supportive Services, supra,* 152 Cal.App.3d at pp. 727–733), nor with its observation that an IHSS worker is "archetypically within the remedial purposes of the workers' compensation law" (*id*. at p. 732). But the general application of those principles does not provide the dispositive answer to the question before us.

---

[20] Labor Code section 3351.5, subdivision (b) refers to the IHSS provider as "*an* employee" of the recipient, not *the* employee of the recipient. (See *In-Home Supportive Services, supra,* 152 Cal.App.3d at pp. 733–734.) Unemployment Insurance Code section 683 provides that " '[e]mployer' *also* means *any* employing unit which employs [IHSS providers] and pays [at least $1,000 in a quarter] *and is* . . .[¶] . . . [t]he recipient" under the Direct Payment Mode. (Italics added.) In our view, both statutes are ambiguous as to whether the recipient is intended to be the sole employer or possibly one of multiple joint employers.

20

After finding the state to be a joint employer, the *In-Home Supportive Services* court then inquired "whether an IHSS worker is nonetheless excluded from coverage under [Labor Code] section 3351 by virtue of a statutory exclusion." (*In-Home Supportive Services, supra,* 152 Cal.App.3d at p. 733.)  There, the state did not rely on the exclusions of Labor Code section 3352, and no statute expressly excluded the IHSS provider's employment relationship with the state from coverage.  The state essentially argued the 1978 amendment to Labor Code section 3351.5, subdivision (b) (Stats. 1978, ch. 463, § 2, p. 1571)—stating an IHSS provider is "*an* employee of the recipient"—by negative implication meant the provider could not also be an employee of the state.  (*In-Home Supportive Services*, at pp. 733–734.)  The court rejected the argument as a matter of statutory interpretation.  (*Id.* at p. 734.)

Our disagreement is with *In-Home Supportive Services*'s interpretation of the legislative history of Statutes 1978, chapter 463, which added subdivision (b) to section 3351.5 of the Labor Code at the same time it enacted Unemployment Insurance Code section 683 and Welfare and Institutions Code section 12302.2.  *In-Home Supportive Services* holds that the purpose of the legislation was to relieve recipients of the burdens of being deemed the employers of IHSS providers, *rather than* to relieve any burdens of the counties or the state.  (*In-Home Supportive Services, supra,* 152 Cal.App.3d at p. 738 ["[t]he statute tells us the Legislature is concerned with the welfare of the recipient, not the state"].)  However, in so doing, the court relied on a statement that addressed only the factual basis for deeming the legislation an urgency statute:  "Coverage of in-home supportive services for workers' compensation, unemployment and disability insurance has resulted in hardship to recipients of such services and confusion as to the status of recipients as employers.  In order to provide for the welfare of recipients by establishing a system of assurances and delegation of performance of employer's duties, it is necessary that this act take effect immediately."  (Stats. 1978, ch. 463, § 6, p. 1573; see *In-Home Supportive Services*, at p. 736.)  *In-Home Supportive Services* places too much weight on this statement, which does not purport to be a complete description of the Legislature's intent in enacting the legislation.

21

The *In-Home Supportive Services* court also expressly rejected the interpretation of legislative intent we find supported by the legislative history: i.e., the statutory enactments were designed to be the least costly response to administrative and court decisions that had deemed counties the IHSS providers' employers. (See *In-Home Supportive Services, supra,* 152 Cal.App.3d at p. 740.) The court noted that the government parties in *In-Home Supportive Services* had cited to an agency memorandum "sent to some members of the Legislature and legislative staff to persuade them to enact" the legislation. (*Ibid.*) The court ruled the memorandum could not demonstrate the Legislature's intent because evidence was lacking as to whether the whole Legislature received or relied on it. (*Id.* at p. 740; see *id.* at pp. 739–740 & fns. 25, 27.) As we explained *ante*, however, other legislative history materials of types deemed reliable indicators of legislative intent (committee analyses and enrolled bill reports sent to the governor; see *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc., supra,* 133 Cal.App.4th at pp. 31–37; *In re Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1218, fn. 3 [enrolled bill reports recognized as "instructive" as to legislative intent]), and which were not discussed in *In-Home Supportive Services*, support our interpretation of the legislative intent.

In sum, we are unpersuaded by *In-Home Supportive Services*'s analysis of the relevant legislative history. We do not, however, need to decide if its ultimate conclusion of joint employment for worker's compensation coverage was correct. We conclude that, at least for purposes of unemployment insurance coverage, the Legislature has clearly designated IHSS recipients as the sole employers of IHSS providers under the Direct Payment Mode.

## III. DISPOSITION

The judgment of the superior court upholding the validity of *Caldera, supra,* CUIAB Precedent Benefit Decision No. P-B-507 is affirmed. Skidgel shall pay the CUIAB's costs on appeal.

22

_____

BRUINIERS, J.


WE CONCUR:


_____

SIMONS, Acting P. J.


_____

NEEDHAM, J.


A151224

Superior Court of Alameda County, No. RG16810609, Robert B. Freedman, Judge.

Legal Services of Northern California, Stephen E. Goldberg and Wade Askew for Plaintiff and Appellant.

Anthony Mischel and Catherine Ruckelhaus for National Employment Law Project as Amicus Curiae on behalf of Plaintiff and Appellant.

Rothner, Segall & Greenstone, Anthony R. Segall and Hannah Weinstein for United Domestic Workers of America, AFSCME Local 3930, AFL-CIO as Amicus Curiae on behalf of Plaintiff and Appellant.

Laurel R. Webb for Service Employees International Union Local 2015 as Amicus Curiae on behalf of Plaintiff and Appellant.

Xavier Becerra, Attorney General, Julie Weng-Gutierrez, Assistant Attorney General, Susan M. Carson and Hadara R. Stanton, Deputy Attorneys General, for Defendant and Respondent.

Superior Court of Alameda County, No. RG16810609, Robert B. Freedman, Judge.

Legal Services of Northern California, Stephen E. Goldberg and Wade Askew for Plaintiff and Appellant.

Anthony Mischel and Catherine Ruckelhaus for National Employment Law Project as Amicus Curiae on behalf of Plaintiff and Appellant.

Rothner, Segall & Greenstone, Anthony R. Segall and Hannah Weinstein for United Domestic Workers of America, AFSCME Local 3930, AFL-CIO as Amicus Curiae on behalf of Plaintiff and Appellant.

Laurel R. Webb for Service Employees International Union Local 2015 as Amicus Curiae on behalf of Plaintiff and Appellant.

Xavier Becerra, Attorney General, Julie Weng-Gutierrez, Assistant Attorney General, Susan M. Carson and Hadara R. Stanton, Deputy Attorneys General, for Defendant and Respondent.